STATE OF FLORIDA on the relation of FRED H. DAVIS, Attorney General of said State, *Petitioner*, v. THE HONORABLE E. C. LOVE, One of the Judges of the Circuit Court of the Second Judicial Circuit of Florida Sitting In and For Leon County, Florida, and C. F. LYTLE, *Respondents*.

STATE OF FLORIDA on the Relation of FRED H. DAVIS, Attorney General of said State, *Petitioner*, v. THE HONORABLE E. C. LOVE, One of the Judges of the Circuit Court of the Second Judicial Circuit of Florida Sitting In and For Leon County, Florida, and MASSACHUSETTS BONDING & INSURANCE COMPANY, a Corporation, *Respondents*.

En Banc.

Opinion filed February 14, 1930.

334

336

*Fred H. Davis,* Attorney General, *B. A. Meginniss* and *W. J. Oven,* Attorneys for the Petitioners.

*Watson & Pasco & Brown, Cooper, Knight, Adair, Cooper & Osborne* and *Marks, Marks & Holt,* Attorneys for the Respondent.

BROWN, J.—Both of these cases turn upon the same questions. They arise out of separate petitions for writs of prohibition directed to Hon. E. C. Love as circuit judge and C. J. Lytle, as respondents in one case, and to the same judge and the Massachusetts Bonding & Insurance Company as respondents in the other case, seeking peremptory writs of prohibition to restrain Judge Love from proceeding to hear and determine two certain suits pending before him in the circuit court of Leon County, Florida, in which Lytle and the bonding company respectively are plaintiffs and the State Road Department is defendant. Alternative writs of prohibition were issued by this Court in each of the cases and in due course Judge Love filed his separate answers in each case and Lytle and the bonding company respectively filed motions to quash the alternative writs, and likewise filed, subject to the motion to quash, answers to the alternative writs.

Each of the two suits pending in the circuit court of Leon County was a suit on "claims arising under contract for work done," within the meaning of Sec. 4, of Chapter 9312, Laws of Florida, Acts of 1923, which purports to authorize the maintenance of suits against the State Road Department on claims of that character.

Each of the petitions for writs of prohibition were filed by the State on the relation of the Attorney General, and each of them alleged that the State Road Department by its attorneys had appeared specially in such circuit court and moved to quash the writ of summons *ad respondendum* issued in each of said causes and to contest the jurisdiction of the court on the ground that no lawful provisions had been made for the maintenance of suits against the State Road Department, which department was an agency and component part of the State government; which motions to quash the said judge had overruled, and had required the respective defendants to plead or demur on or before a named date. The petition further alleged that unless prevented from so doing the respondent circuit judge would proceed to entertain said causes and thereby put members of the State Road Department to great expense and inconvenience in preparing for and attending the trial, including the gathering of witnesses, the taking of the employees from the various departments of the defendant's activities, and thereby putting the State to a great deal of inconvenience, trouble and expense without authority of law, inasmuch as said circuit court was without power or jurisdiction to entertain or adjudicate said causes. It is further alleged that said Sec. 4 of Chap. 9312, Laws of Florida, is unconstitutional and void in that the subject matter of said section is not embraced in the title of the Act, but deals with a separate and distinct subject, to-wit, the surrender of the State's sovereign im-

munity from suit, which is controlled by Sec. 22 of Art. III of the Constitution, and also because said section is a special law relating to a certain class of contractors, hence in violation of both Secs. 20 and 22 of Art. III of the Constitution.

The answer of Circuit Judge Love sets up among other things that said Sec. 4 is valid and duly evidences the legislative consent for the maintenance of suits of this character; that the circuit court is a court of general jurisdiction and had jurisdiction of these causes under the Constitution and Laws of Florida. It is also alleged that no member of the State Road Department would be injured in person, property or rights by the maintenance of said suit and that it thus appears that neither said department nor any member thereof had any right to question the constitutionality of Sec. 4 of Chap. 9312.

The respondent Lytle and the bonding company, respectively filed answers and motion to quash, in which motions in addition to the questions above mentioned, it is denied that the relator, the Attorney General, has any right to question the validity of said statutory provisions.

The first question raised by the pleadings which we will treat briefly is whether or not this case falls within the scope of the remedy applied for, that is, writs of prohibition. It was held in the case of Crill v. State Road Department, 117 So. R. 795, 96 Fla. 110, that the circuit court was vested with jurisdiction over condemnation proceedings by Sec. 11 of Art. V of the Constitution, and by our general statutes, and that therefore in such a proceeding such court had jurisdiction to pass upon the constitutionality of an Act of the Legislature under which the petitioner claimed the right to condemn the property described in the petition. But it was observed in that case that "where a court's jurisdiction of the subject matter itself is at-

tempted to be conferred by a void and unconstitutional statute, such court may be prevented by a writ of prohibition from exercising such supposed jurisdiction in any particular case as to which relief is sought.'' The same exception would apply where the court's jurisdiction of the person of a defendant is attempted to be conferred by a void and unconstitutional statute. Obviously, the purpose of the statutory provision here in question was to confer jurisdiction upon the courts of this State, to entertain and adjudicate suits of a certain class against a component part of the State government, the State Road Department, a jurisdiction which had never existed prior to the adoption of that statute, and a jurisdiction which of course did not exist at the time the Constitution of 1885 was adopted. Obviously also, if such statutory provision be unconstitutional and void, such jurisdiction has never been conferred, and the writ of prohibition may be resorted to, to prevent the usurpation of such jurisdiction. This is one of the primary purposes of the writ of prohibition, which, as was said in the Crill case, ''is that process by which a superior court prevents an inferior court from exceeding its jurisdiction or usurping a jurisdiction with which it has not been vested by law.'' So writ of prohibition is the appropriate remedy in this case.

The next question to be considered is whether the petition for this writ could properly be filed by the relator in this case, such relator being the Attorney General of the State. We think this question must be answered in the affirmative. In State v. Gleason, 12 Fla. 190, Text 212, it was said:

''The Attorney General is the attorney and legal guardian of the people, or of the crown, according to the form of government. His duties pertain to the

executive department of the State, and it is *his duty* to use means most effectual to the enforcement of the laws, and the protection of the people, whenever directed by the proper authority, or when occasion arises.'' State v. Gleason, 12 Fla. 190, text 212.

"Our Legislature has not seen fit to make any change in the common law rule. The office of the Attorney General is a public trust. It is a legal presumption that he will do his duty, that he will act with strict impartiality. In this confidence he has been endowed with a large discretion, not only in cases like this, but in other matters of public concern. The exercise of such discretion is in its nature a judicial act, from which there is no appeal, and over which the courts have no control. 3 Abbot, 131.''

See also State v. Jones, 16 Fla. 306; State v. Bryan, 50 Fla. 293, text 350; 39 So. R. 929, text 947; State v. City of Sarasota, 92 Fla. 563, 109 So. R. 473.

It is to the interest of the State that its immunity from suit shall be maintained and protected until the State itself, through its legislature, by the methods pointed out in the Constitution, consents to waive or withdraw such immunity. And as the Attorney General is the principal law officer of the State, we think that he may, as relator, invoke the supervisory powers of the Supreme Court over inferior jurisdictions by such methods as may be necessary and appropriate, to the end that the jurisdiction of the courts of the State may not be exceeded in such sort as to impair or take away such immunity from suits. It was in substance so held in ex parte State ex rel. Martin, Attorney General, 200 Ala. 15, 75 So. R. 327.

It is further contended that the State Road Department had no right to question the constitutionality of said

Sec. 4, in the court below, without showing that the members of the board would be injured in person, property or rights by its enforcement. In support of this contention counsel for respondents rely almost entirely upon the case of State ex rel. A. C. L. R. Co. v. Board of Equalizers, 84 Fla. 592, 94 So. R. 681. In that case the action was one of mandamus in which it was sought to require the executive officers of the State to perform, as a board, a function prescribed by statute, and which they refused to perform because they had themselves, without submitting the question to any court, decided the statute to be unconstitutional. This they set up in their answer as their reason for refusing to act. That case is not in point here. This is not a case of a refusal by an administrative board to take action because that board had itself determined that the Act under which they were asked to proceed was unconstitutional. In the instant case, the State department did not arrogate to itself the determination of a constitutional question, but, in effect, it submitted that question to the determination of the circuit court, which court decided that the statutory provision permitting the suits was valid and that the court had jurisdiction to proceed. It was then that the Attorney General of the State came into this Court, alleging the unconstitutionality of such provision for the reasons set forth in the petition, and asked this Court to determine the State's right on the question involved, the State Road Department being a component part of the State government. To sustain respondents' contentions in this respect would amount in substance to a denial to the sovereign of the right to be heard in its own courts through and by its chief law officer, on the question as to whether it may be lawfully subjected to suit in such courts.

We now come to the main question in the case, the con-

stitutionality *vel non of* Section 4 of Chapter 9312, which is Section 1651, Comp. Gen. Laws. That section reads as follows:

"Sec. 4. Suits at law and in equity may be maintained by and against the State Road Department on any claim arising under contract for work done. Provided, no suit in *tort* shall be maintained against the department."

This Court has already held that the State Road Department is an agency of the State and a component part of the State government. It follows that suits against such department of the kind named in said section would be in effect suits against the State.

It was contended on the argument that such a provision as the one in question would put into effect a wise public policy; that it would afford contractors doing construction work for the Road Department an assurance of protection of their contractual rights which would tend to command the services of the highest class of contractors, and would also have an economical value in that it might tend to lower bids for construction work on account of the assurance of such protection, and that the state had nothing to fear, as it would certainly be accorded justice in its own courts. We do not question the public policy of this section; such is not within our province. But it might also be proper to observe that the rule is that statutes in derogation of State sovereignty are to be strictly construed. 25 R. C. L., 416-17. The legal doctrine that a sovereign State is immune from suit is an ancient one. While it probably had its origin in the old theory that sovereignty was inherent in the crown, and that the king could do not wrong, and hence could not be sued, though as a matter of grace a petition could be addressed to him

in the high court of chancery, still this doctrine was quite jealously preserved in this country by the various States after they had by united action secured their independence from the monarchical government of England. It will be recalled that very soon after our Federal Constitution was adopted, the Supreme Court of the United States held, in the case of Chisholm v. Georgia, 2 Dallas 419, that under the Federal Constitution a State could be sued in assumpsit by a citizen of another State. This decision brought about the prompt adoption of the eleventh amendment to the Federal Constitution, to the effect that the judicial power of the United States should not extend to any suit at law or in equity against any State by citizens of another State or of any foreign country. It was, whether wisely or not, deemed that certain practical considerations warranted continued adherence to this ancient rule that a sovereign State was immune from suit, even when brought by one of its own citizens. Thus it had been said by many of our courts that inconvenience and perhaps danger might result from its abrogation; that the public service would be hindered and the public safety endangered if the supreme authority could be subjected to suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government. 25 R. C. L. 413. We are not here concerned with those modifications or distinctions related to but not vitally affecting this time honored principle, such, for instance, as those cases holding that persons holding public office, who, under color of supposed authority, unlawfully invade the rights of the citizen, may in proper cases be proceeded against by suits appropriate to the purpose. This was an echo of an ancient doctrine. It was long ago recognized that ''While the king can do no wrong, his ministers may.'' Suffice it

to say, that this principle of the State's immunity from suit is not only well settled but has long been regarded as a matter of considerable importance. This is further exemplified by the fact that although we have had a constitutional provision since the Constitution of 1868 authorizing the Legislature to permit suits against the State by general law, the Legislature has not in all that time, so far as the writer has been able to find, seen fit to pass any general law on the subject, unless the statutory provision now under consideration can be held to be such.

Section 22 of Art. 3 of the Constitution of 1885, which was Section 19 of Art. 4 of the Constitution of 1868, is as follows:

"Provision may be made by general law for bringing suit against the State as to all liabilities now existing or hereafter originating."

A few years ago, the legislature, by a provision in a special statute relating to a particular drainage district, attempted to permit the State to be sued in the foreclosure of drainage tax liens, but, the statute being special and local, this provision of the statute was held to be invalid. So. Drainage Dist. v. State, 112 So. R. 561, 93 Fla. 590.

It is contended by the respondents in this case that the statute here involved is a general law, and that Section 4 thereof, being a part of such general law, and germane to the subject expressed in the title thereof, complies with both Sections 16 and 22 of Art. III of the Constitution. The title of the statute, Chapter 9312, Laws of 1923, is:

"An Act Relating to the State Road Department Imposing Certain Duties Upon said Department and Conferring Certain Powers Upon the Same."

It is also contended that the general character of this Act is emphasized by the fact that this act is one of a series of several acts passed at the same session establishing the system of laws under which the Road Department, though itself created by a prior statute, was to operate, and has operated since that time, with very little material change.

We think it must be conceded that Chapter 9312, dealing as it does with the powers and duties of a department with State-wide powers and duties, and constituting a component part of the State government, may be regarded as a general law, as distinguished from a special or local law.

It is also contended that the title refers to the conferring of "powers" upon the Road Department, and that the power to sue and be sued is generally recognized as a *power* in acts relating to both public and private corporations, and that therefore Section 4 is within the scope of the title and fairly indicated thereby, and thus in compliance with Sec. 16 of Art. III of the Constitution. The "power" to be sued, as well as to sue, may doubtless be correctly termed a "power" when used in acts incorporating or providing for the incorporation of ordinary corporate entities, even of quasi public or public corporations, which form no part of the State government; (see Arundel Corp. v. Griffin, 103 So. R. 422), but an act dealing with the powers and duties of a component part, or a department, of the State government comes within a somewhat different category. The use of the words "Conferring Certain Powers" upon such a department, when used in the title of such an act, could hardly be held to constitute fair notice that in the body of the act the State's immunity from suit would be taken away, as to suits of a certain nature, against such State agency or department. The State Road Department was not a corporation at the time

this act was passed. It was not until the Act of 1925, Chapter 10118, was adopted, that it was declared to be a body corporate, and then only for the purpose of that particular act, which purported to vest such department with the power of eminent domain and the right to maintain condemnation proceedings for certain specific purposes. The waiver, or taking away, in whole or in part, of the State's immunity from suit, which would otherwise protect such State agency from suits of every nature, can hardly be termed the "conferring" of a "power" upon such State agency. It is in fact, more in the nature of the imposition of a burden or liability than the granting of a power. The power, so far as there is a power, is conferred upon the courts and upon contractors of a certain class dealing with the Road Department, and not upon the Department. In this connection, see Hampton v. State Board of Education, 90 Fla. 88, 105 So. R. 323.

But it is contended by respondents that the first part of the title to Chapter 9312, reading, "An Act Relating to the State Road Department," is broad and comprehensive enough to cover the disputed Section 4; that these words state the broad subject of the Act, and that their comprehensive meaning is not to be restricted by the remaining language of the title, as to "imposing certain duties" and "conferring certain powers."

In State ex rel. Attorney General v. Burns, 38 Fla. 367, 21 So. R. 290, quoting the first and second headnotes, it was said:

"1. A leading purpose of Section 16, Art. III, of the Constitution is to prevent the incorporation into one Act of legislation of more than one subject and matter properly connected therewith. A further object of the requirement is to avoid surprise or fraud

in legislation by means of provisions in bills, of which the titles give no sufficient notice, and to this end a title of an Act should fairly apprise not only the members of the Legislature, but the people to be affected, of the subject of legislation being enacted.

"2. When the title of an Act clearly expresses the whole object of the Legislature, and the provisions in the body of the Act are germane to the subject expressed in the title, an essential requirement of the Constitution has been met, but a general subject may become restricted in details in the body of the Act by the title, and where one is so framed as to indicate that matters connected with the subject, generally considered, are not to be treated of in the bill, it is misleading as to any legislation on such matters."

Even though we had no such constitutional provision as Section 22 of Art. III, it is extremely doubtful whether Section 4 of Chapter 9312 could be held valid under Section 16 of Art. III as construed in the case just quoted from. But when Section 22 of Art. III is taken into consideration, we think the invalidity of said Section 4 of the Act, if Section 16 of Art. III of the Constitution be applied thereto, becomes plain, as hereinafter shown.

We take it that if full force and effect be given to Section 22 of Art. III of the Constitution, providing that "Provision may be made by general law for bringing suit against the State," it means, among other things, that if the Legislature sees fit to legislate upon that subject at all, it must do so by "general law" dealing with that subject. It is by the Constitution undoubtedly considered of sufficient importance to be made a subject for legislation of a general, rather than a special or local, nature; and it would be inconsistent with the intent of the Constitution to deal with this subject merely incidentally in acts re-

lating to other subjects. This is consistent, too, with the historical background above alluded to. In other words, the effect of the constitutional provision is to make this matter of legislative waiver of the State's immunity from suit sufficient, in and of itself, to constitute an independent subject of legislation, general in its character. And in view of Section 16 of the same Article III, providing that each Act shall embrace *but one subject,* we are inclined to agree with the Attorney General's contention that the legislation authorized by Section 22 of that article can only be dealt with in an Act or Acts having that matter as its subject, and that to embrace it in some other Act pertaining to some other subject, though there might be some reasonable connection between the two, would result in making such other Act embrace two subjects. In any view that might be reasonably taken, it would hardly be consistent with the language and intent of Section 22 of Art. III to hold that the immunity of the State from suit, which the legislature may provide for by general law pursuant to that section, can be taken away by a mere provision incidentally embraced in an Act dealing with another subject, the title of which Act, however broad and comprehensive, makes no mention whatever of removing the State's immunity from suit and fails to fairly apprise the members of the Legislature and the people that such an important matter is one of the matters to be dealt with in such Act.

As was well said in the relator's brief:

"To take any other view of this provision must necessarily mean that the Legislature can disregard the provision entirely and by consistent whittling of a small part at a time, each chip hidden out in a section of an Act dealing with some other subject, eventually destroy the entire provision so incorporated

by the framers of our organic law and brought down from the common law to protect all the people of the State and to preserve its immunity.''

It is also contended by the relator that even though Chapter 9312 be held a general law, Section 4 is in its essence a special law, in that it authorizes suits against the State Road Department, and no other department, and then only by contractors having claims arising under contracts for work done for that department, thus also making an unconstitutional discrimination against contractors who do work for other agencies and departments of the State government. We cannot accede to this contention. At the time this Act was passed no contractor or class of contractors nor any one else, had any right to sue the State or any of its governmental departments. Hence no one had any vested right to be impaired or discriminated against. By this provision of the Act, if it had been constitutionally adopted, the action of the Legislature would have been in the nature of extending a privilege to a limited class. It would not have deprived any other citizen of any existing right. In 25 R. C. L. 416, the following summary of the holdings in the leading cases on this subject appears:

"Legislative acts authorizing individuals to sue the State upon claims which the legislature, for any cause, does not see fit to recognize and pay have been passed in many of the states. Their purpose and effect, as commonly understood, are undoubtedly nothing more than to refer to the judiciary the settlement of the questions of law and fact involved in the claims, and the determination, in the form of a judgment, of the rights of the parties. They do not authorize a seizure of state property to satisfy judgments recovered, and

only convey an implication that the legislature will recognize such judgment as final, and make provision for the satisfaction thereof. If the state consents to be sued, it is only in the manner it prescribes. And all persons seeking to avail themselves of the privilege so granted must accept it subject to the terms and conditions attached thereto or forming a part of the right as granted by the state. Thus, the state has a right to couple with its consent to be sued a condition that the suit be brought in one of its own courts, or to limit the right to sue to certain specified causes. Permission to sue the state may be withdrawn or denied at any time the Legislature may think proper, even to the extent of abating pending suits.''

See also Beers v. Arkansas, 20 Howard 527, 15 Law Ed. 991; Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 Law Ed. 1140.

Of course the legislature could not under our Constitutional provision, pass any special law on this subject, nor could it act arbitrarily and unreasonably in the exercise of this power. Thus in Oregon it was held that a statute authorizing a particular individual to bring suit against the State in a particular court with respect to land not situated within the county of the forum, was unconstitutional in several respects, and hence void. Altshul v. State, 144 Pac. R. 124. This was clearly a special law, while our Constitution expressly requires that any act dealing with this subject must be a *general* law. But this section of the Constitution does not deny to the legislature its usual power to make reasonable classifications. It may prescribe the class or classes of cases and the terms and conditions upon which the State may be sued. 36 Cyc. 913. In the absence of constitutional provision to the contrary, it is

said that ''The Legislature is the proper body to authorize suits against the State, and it may consent to a particular suit by joint resolution as well as by bill.'' 26 Am. & Eng. Encyc. of Law, 486. This power was possessed by the legislature of this State prior to the adoption of the constitutional provision on the subject in the Constitution of 1868, now appearing as Section 22 of Art. III of the Constitution of 1885. This constitutional provision prescribes the method by which the power may be exercised, and we have frequently held that when the Constitution prescribes a method by which any act may be accomplished, that method is exclusive. So the legislature of this State may not consent to the State being sued in any other manner than that prescribed by the Constitution. Hampton v. State Board of Education, 90 Fla. 88, 105 So. R. 323.

We cannot therefore agree with the contention of the relator that the subject matter of the disputed Section 4 is so special in its character that it would have been void even though it had been provided for by a separate statute with an appropriate title. Our view is that under Section 22 of Art. III the Legislature may by a general law authorize suits to be brought against the State even though in a very limited class of cases, so long as there is any reasonable foundation for such limited classification. Here suits were authorized only against the State Road Department and then only ''on any claim arising under contract for work done.'' But it must be remembered that the department named carries on a vast amount of construction work under contracts with numerous persons, exceeding in volume that done by all other agencies or departments of the State government put together. So the classification is not so extremely limited after all; nor, so far as any facts alleged in the pleadings are concerned, can we say that it is arbitrary or unreasonable. See Blox-

ham v. F. C. & P. Ry. Co., 35 Fla. 625, 17 So. R. 902, wherein it is said that: "A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special." Surely a statute is general in its nature which provides that: "Suits at law and in equity may be maintained by and against the State Road Department on any claim arising under contract for work done."

Finally it is further insisted that inasmuch as Section 22 of Art. III says that "Provision may be made by general law for bringing suit against the State as to all liabilities now existing or hereafter originating," that in order for a law to be passed in accordance therewith, it must be a law dealing comprehensively with the entire subject, that is, "all liabilities," present and future. This view is untenable. The constitutional provision does not say "a general law," but merely "general law," which may mean one law, or several laws. Nor would it be reasonable to construe it to mean that if the Legislature sees fit to permit only one class of suits against the State, in order to effectuate its purpose it would be compelled to permit suits "as to all liabilities now existing or hereafter originating," actions *ex delicto* as well as those *ex contractu*. In the absence of a constitutional provision of this nature, the legislature would have had practically plenary power over this subject, and could have acted with reference thereto by special as well as general statutes. We think the purpose of the constitutional provision was to leave the Legislature untrammelled in legislating on this subject as to "all liabilities now existing or hereafter originating," but to limit the method of the exercise of this power to the passage of general, rather than special or local laws.

But, for the reasons above pointed out, the Legislature

cannot exercise the power to legislate on this subject by the method adopted in this instance, and Section 4 of Chapter 9312 must be held null and void and hence incapable of conferring jurisdiction upon the circuit court to entertain or adjudicate these suits against the State Road Department. Thus Section 4 may be regarded as eliminated from the statute.

The motions to quash the alternative writs will be denied and a peremptory writ of prohibition will be granted, as prayed, in each of the two cases.

It is so ordered.

WHITFIELD, ELLIS, STRUM AND BUFORD, J. J., concur.

TERRELL, C. J., not participating.

WHITFIELD, J. (concurring):

The Constitution expressly recognizes as a distinct subject of legislation, the making of provision by general law for bringing suit against the State; and in its nature such subject is not "matter properly connected with" a subject that is as restrictive as is that relating to the powers and duties of the State Road Department, since "provision * * * for bringing suit against the State as to all liabilities now existing or hereafter originating," is itself a major subject; while imposing certain duties, and conferring certain powers upon the State Road Department, is a subject of much less magnitude, even when considered without reference to the express requirements of Sections 16 and 22, Article III of the State Constitution, which sections are peculiarly applicable to Chapter 9312, Acts of 1923.

While the Act imposing certain duties and conferring certain powers upon the State Road Department may be

regarded as a general law within the limitations of Sections 20 and 21, Article III, Constitution, yet the provision of Section 4 of the Act that "suits at law in equity may be maintained by and against the State Road Department on any claim arising under contract for work done" does not appear to be a general law for bringing suit against the State as to all liabilities now existing or hereafter originating as is expressly required by Section 22, Article III, Constitution. This organic provision considered with Section 16, Article III, makes it clear that the quoted provision of Section 4, Chapter 9312, is not a part of or "matter properly connected" with, the subject expressed in the title of Chapter 9312, therefore, the title is misleading and legally insufficient as to the quoted provisions of Section 4 of the Act.

In effect the subject expressed in the title of Chapter 9312, Acts of 1923, is: "imposing certain duties, and conferring certain powers upon the State Road Department." The words of the title do not fairly indicate that the Act might contain a provision that "suits at law and in equity may be maintained by and against the State Road Department." The State Road Department is an agency of the State and a suit against it would be in effect a suit against the State. Hampton v. State, 90 Fla. 88, 105 So. R. 323, A. L. R. The State, by virtue of its sovereignty is immune from suit against it, unless it consents thereto. Under the Constitution, "provision may be made by general law for bringing suits against the State." If it be assumed that under Section 22, Article III, Constitution, provision for suits against State agencies may be made in a law dealing with any other subject, such provision is an unusual subject matter of legislation and is in derogation of State sovereignty; and when provision for bringing suit against the State is included in a bill to be enacted

into law, the title of the Act should *contain language sufficiently definite and comprehensive to indicate* that such provision to bring suit against the State is the subject of the Act, or that such subject is included in the subject expressed in the title of the Act, or that such subject is matter properly connected with the subject expressed in the title of the Act, or that such subject, is a necessary or proper incident to the subject expressed in the title. Titles to Acts are intended to apprise legislators and the public of the subject being legislated upon. Matters properly connected with the subject stated in the title may be included in the Act without being stated in the title, but under Section 16, Article III, Constitution, an Act cannot legally contain incongruous and unrelated matters or matters not fairly covered by a single subject expressed in the title or matters not properly connected with such subject. What is matter properly connected with the subject expressed in the title of an Act is to be determined from a consideration of any controlling law in the premises and a fair interpretation of the language used in the title and its meaning with reference to the subject matter of legislation and its ordinary acceptation.

Whatever may be the ordinary understanding generally as to whether the power or authority to sue and be sued is included in or matter properly connected with the subject of statutory provisions conferring powers upon *private corporations,* it cannot fairly be said that even if there is no controlling provision of law applicable in the case, the ordinary and usual understanding is that provisions of law imposing duties and conferring powers upon State agencies may properly, or do usually, include or make incident thereto, provisions making such State agencies amenable to suits, from which they as State agencies are by law immune. Even in the absence of any other ap-

plicable organic provision as to the nature and content of a statute, Section 16, Article III of the Constitution requires that the title of an act shall fairly express the subject of the act, and that the act shall not contain any provision that is not within the subject expressed in the title or that is not matter properly connected with the subject expressed in the title; i. e., fairly germane or incident thereto, *and that the title shall not be misleading as to the contents of the act.* When an act may legally contain provisions relating to suits against State agencies, its title should by some of its terms indicate with some degree of definiteness that provisions of that nature are included in the act, since such provisions are unusual and are not matters that are generally regarded as being germane or incident to or properly connected with the subject of conferring powers and duties upon State agencies. Even if provision for suits against the State may be permissible in an act on a subject like this one, the language used in expressing the subject that is stated in the title of Chapter 9312, is misleading in that such language, as ordinarily understood does not indicate that the act may contain a provision making the State Road Department amenable to suit from which it would be immune under the laws of this State. The provisions of Section 4 of Chapter 9312, permitting the State Road Department to be sued, are not within or a part of or fairly germane or incident to the subject of imposing duties and conferring powers upon the State Road Department that is expressed in the title of the act, and such provision not being fairly embraced within the subject expressed in the title and not being "matter properly connected therewith," the quoted provisions of Section 4 are violative of Section 16, Article III, Constitution, and are inoperative though the remainder of the act be not affected thereby. Advisory Opinion to the Gov-

ernor, 14 Fla. 285; Car v. Thomas et al., 18 Fla. 736; S. F. & W. Ry. Co. v. J. H. Greiger, 21 Fla. 669; State ex rel. Gonzalez v. Samuel Palmes, 23 Fla. 620, 3 So. R. 171; State ex rel. Attorney-General v. Burns, 38 Fla. 367, 21 So. R. 290; Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 So. R. 72; Ex Parte Knight and Knight, 52 Fla. 144, 41 So. R. 786; Smith v. Chase, 91 Fla. 1044, 109 So. R. 94; Prairie Pebble Phos. Co. v. Silverman, 80 Fla. 541, 86 So. R. 508; Albritton v. State of Florida, 82 Fla. 20, 89 So. R. 360; Martin et al. v. Dade Muck Land Co., 96 Fla. 530, 116 So. R. 449. The organic section has reference to provisions contained in enacted legislation, whether such provisions are incorporated in the bill when introduced or are added by amendments; and entries in legislative journals cannot supply the essentials in titles to acts.

While Sections 1, 2, 3, 4, 5, 6, 7, 8, 9, Chapter 9312, Acts 1923, are incorporated as Sections 1644-55, in the Compiled General Laws, 1927, such compilation has not been enacted by the legislature as an entire revision of the general laws of the State, and consequently even if Section 4 is otherwise valid and effective, the defect in the title of Chapter 9312 as to Section 4 of the chapter, has not been cured by re-enactment in a general *revision* of the laws, as in Christopher v. Mungen, 61 Fla. 513, text 534, 55 So. R. 273; Carlton v. State, 63 Fla. 1, 58 So. R. 486; Henderson-Waits Lumber Co. v. Croft, 89 Fla. 119, 103 So. R. 414; Montsdoca v. Highlands B. & T. Co., 85 Fla. 158, 162, 95 So. R. 666; Central of Georgia Ry. Co. v. State, 104 Ga. 831, text 832, 31 S. E. R. 531; 25 R. C. L. 867; Kennedy v. Meara, 127 Ga. 68, 56 S. E. R. 243; Smith v. Faris-Kesl Const. Co., 27 Idaho 407, text 433, 150 Pac. R. 25; Park v. Laurens Cotton Mills, 75 S. C. 560, 56 S. E. R. 234; 36 Cyc. 1068; State ex rel. v. Board, 98 Fla. 66, 123 So. R. 540.

The Compiled General Laws of Florida, 1927, are a compilation and not a revision of the general laws of the State, while the Revised Statutes of 1892, the General Statutes of 1906 and the Revised General Statutes of 1920, are revisions of the general laws of the State, each revision having been enacted by the legislature, as an entirety under appropriate general titles.