257 So.2d 891 (1972)
STATE of Florida ex rel. Robert L. SHEVIN, Attorney General of the State of Florida, Petitioner,
v.
Jess YARBOROUGH, Chairman, et al., Respondents.
No. 41699.
Supreme Court of Florida.
January 26, 1972.
*892 Robert L. Shevin, Atty. Gen., Herbert T. Schwartz, Deputy Atty. Gen., Daniel S. Dearing, Chief Trial Counsel, Tallahassee, W. Robert Olive, Jr., and Howell L. Ferguson, Asst. Attys. Gen., for petitioner.
Prentice P. Pruitt and M. Robert Christ, Tallahassee, Fla. Public Service Comm., for respondent.
Leonard Helfand, Miami Beach, for The Florida State Council for Senior Citizens, Inc., as amicus curiae.
PER CURIAM.
This is an original proceeding in mandamus upon the petition of the Attorney General of Florida seeking to compel the Respondent Public Service Commission to allow him to intervene "on behalf of all citizens of the State of Florida who are consumers of the electrical services provided by Florida Power Corp. in a pending application for rate increase before the Public Service Commission" (P.S.C. hereafter). Fla. Const. art. V, § 4, F.S.A.
Respondent P.S.C. has recognized the intervention before it of the Attorney General on behalf of the State of Florida as a consumer and this right is in no wise questioned. Respondent's order initially allowed the intervention by the Attorney General also as representing all affected citizens, but thereafter receded from this latter provision in the following language:
"We certainly recognize the authority of the Attorney General to intervene in this proceeding representing the State of Florida as a substantial consumer of the service of Florida Power Corporation. However, we do not find in the constitution of Florida, the statutes of this State, or in the cases decided by the courts, any requirement or authorization by law or legislative resolution, by which the Attorney General is the advocate of the general body of utility consumers throughout the State of Florida." (Emphasis supplied)
By mandamus the Attorney General requests that the emphasized portion of the order quoted above be expunged, as well as all reference made in the order to the Attorney's powers and duties as a representative and advocate of the citizens and consumers of the State.
On the other hand, P.S.C. says that Fla. Stat. Chapter 366, F.S.A., bestows on it the full power of the State to exercise exclusive jurisdiction for the protection of the public welfare in the regulation and supervision of the rates and services of public *893 utilities, and there is no duty imposed by law on the Attorney General of the State to participate in the functions of the Florida Public Service Commission.
We are faced with the following narrow question:
Where the Attorney General of the State intervenes in proceedings before the P.S.C. representing the State of Florida as a substantial consumer, may the Attorney General under such circumstances present evidence and argument that would benefit all citizens of the State who may be consumers of such services?
Under the provisions of Fla. Const. art. IV, § 4, F.S.A., the Attorney General is the "Chief State Legal Officer" and "shall exercise such duties as may be prescribed by law." Although the P.S.C. by virtue of Fla. Stat. § 366.01, F.S.A., exercises the police power of the State for the protection of the public welfare and by its statutorily authorized Rule 25-1.24, the Legal Department represents the general public interest in all rate cases, there is no statute which prohibits the Attorney General from representing the State of Florida as a consumer, and offering such evidence and argument as will benefit its citizens. Generally speaking, the Attorney General is Chief Counsel for the State which in final analysis is the people. This principle was followed in State ex rel. Landis v. S.H. Kress & Co., 115 Fla. 189, 155 So. 823 (1934), where this Court upheld the power of the Attorney General to test by writ of quo warranto the right of a foreign corporation to operate in Florida.
In State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374 (1930), this Court allowed the Attorney General to file a writ of prohibition against a circuit judge to protect the interest of the State in its sovereign immunity from suit.
In State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929 (1905), the Attorney General brought an original proceeding in quo warranto to attack the validity of a statute creating the Florida Agricultural College. But see Fla. Stat. § 350.31, F.S.A., which provides:
"350.31 Conducting suits.  All suits instituted by the Florida public service commissioners through special counsel shall be conducted as now provided by law, and the department of legal affairs [Attorney General] or any state attorney shall join in any such suit when requested to do so by said commissioners." (italics and bracketed portions supplied)
Also see Section 1(b), Article IV, Constitution of Florida, which says:
"(b) The governor may initiate judicial proceedings in the name of the state against any executive or administrative state, county or municipal officer to enforce compliance with any duty or restrain any unauthorized act."
Nevertheless, the Attorney General is before the Public Service Commission representing the State of Florida because it is a consumer. The State is the people and, therefore, he would have every opportunity to oppose a rate increase on behalf of the State of Florida as a consumer which he would have if he were there representing all the people under a different title. Since he has this opportunity, he is not injured and the cases are legion which hold that where a person has not been injured he has no standing to maintain a suit. The Attorney General has not demonstrated any service to be rendered to all citizen consumers that he could not render as attorney for the State of Florida as a consumer.
The Attorney General inherited many powers and duties from the King's Counsellor at Common Law, but in adopting the Common Law, the Florida Legislature said:
"Common law and certain statutes declared in force.  The common and statute laws of England which are of a general and not a local nature, with the exception *894 hereinafter mentioned, down to the fourth day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the legislature of this state." See F.S. § 2.01, F.S.A. (italics supplied)
Public policy on the outer perimeter of his authority is therefore more a Legislative than Judicial question. We take judicial notice that the Legislature of Florida convenes in a few days and we defer to that august body the broader question of the outer limits of such authority.
These mandamus proceedings are not the vehicle by which all of the powers and duties of the Attorney General may be discussed or decided. We are confronted with the narrow question recited above, and this opinion is limited to a determination of that question alone. Having appeared in such proceedings in behalf of the State of Florida as a consumer, the Attorney General is representing all citizens of the State. In the final analysis, the citizens constitute the State and the State is the people.
The Attorney General, by motion before the P.S.C., sought to require Florida Power Corporation to pay a sum not to exceed $25,000 for an independent audit and investigation of the rate structure in relation to the existing application for rate increase. The denial of this motion was within the discretion of P.S.C. Where the duty is discretionary, mandamus does not lie. See 16 F.L.P., Mandamus, § 14.
The fact that the P.S.C. denied this motion of the Attorney General for funds does not prevent him from accepting funds for purposes consistent with the functions of the department. The representation of the State as a consumer, to the ultimate benefit of the people, is a proper function of the Attorney General and he has authority under Fla. Stat. § 20.05(6), F.S.A., to accept gifts, etc., for the purpose of completing his investigation.
We, therefore, conclude that the Attorney General does have status to represent the State as a consumer and to make all appropriate effort to hold down the rates and in order to insure a continuance of that right peremptory writ should issue to that end and for that purpose. We withhold the issuance of a formal writ in full confidence that the P.S.C. will proceed in compliance with the views herein expressed.
It is so ordered.
ROBERTS, C.J., and CARLTON, ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.
ERVIN, J., concurs specially with opinion.
ERVIN, Justice (specially concurring).
I have always understood that it is the inescapable historic duty of the Attorney General, as the chief state legal officer, to institute, defend or intervene in, any litigation or quasi-judicial administrative proceeding which he determines in his sound official discretion involves a legal matter of compelling public interest. I agree with him that it lay within his authority to deem that the present rate hearing sufficiently came within the legal area of public interest for him to intervene.
The courts of this state have long recognized this advocacy authority, and litigation duty of the Attorney General. It derives from the common law and in only rare instances has the Legislature otherwise provided. See State ex rel. Attorney General v. Gleason, 12 Fla. 190; State ex rel. Moodie v. Bryan, 1905, 50 Fla. 293, 39 So. 929; State ex rel. Landis v. S.H. Kress & Co., 1934, 115 Fla. 189, 155 So. 823; State ex rel. Davis v. Love, 1930, 99 Fla. 333, 126 So. 374; State ex rel. Crim *895 v. Juvenal, 1935, 118 Fla. 487, 159 So. 663; Barr v. Watts, Fla., 70 So.2d 347; Ervin v. Collins, Fla. 1956, 85 So.2d 852, and State ex rel. Ervin v. Jacksonville Expressway Authority, Fla. 1962, 139 So.2d 135.
In Ervin v. Collins, supra, his authority in this specific area was summed up as follows:
"... the Attorney General as the chief law officer of the state ... absent express legislative restriction to the contrary, may exercise his power and authority in the premises [the power to litigate] as the public interest may require. When the public interest is involved a more liberal rule governs who may appropriately bring an action of this kind ..."
Among the cases above cited are statements to the effect that the Attorney General's discretion to litigate, or intervene in, legal matters deemed by him to involve the public interest is the exercise of a judicial act, and his standing therein can not be challenged or adjudicated.
In the Gleason case, supra, it was said the Attorney General:
"... is the attorney and legal guardian of the people ... it is his duty to use means most effectual to ... the protection of the people ... when occasion arises ... The legislature has not seen fit to make any change in the common law rule. The office of the Attorney General is a public trust..."
The Attorney General is elected by the people; he is entrusted by them with the common law power to legally represent them or some of them in matters deemed by him to affect the public interest. He has a discretionary duty under the common law rarely modified by statute to protect the public interests of any of the people who elected him.
It is his discretionary duty to choose those legal matters in the area of public litigation or quasi-judicial administration in which he believes it is his official duty to intervene, except in those instances when it is mandated by the legislature for him to intervene or to refrain from intervening. If he is mistaken in his legal advocacy, the courts and quasi-judicial tribunals always retain the power to rule against him and often do on the merits but this power does not affect his standing to become a party of interest in the cause or proceeding. Regardless of the effectiveness of his efforts in particular public legal situations, at least the people have the continuing satisfaction of knowing that their elected Attorney General has the right to exercise his conscientious official discretion to enter into those legal matters deemed by him to involve the public interest, even though not expressly authorized by statute. The presumption is that he will not enter strictly private litigation and a great degree of latitude must of necessity be extended to him in the exercise of his right to intervene in behalf of public interests.
In State ex rel. Ervin v. Jacksonville Expressway Authority, supra, this Court said it was the proper function of the Attorney General in the interest of the public to test the exercise of power of a corporate state agency.
F.S. Section 16.01, F.S.A. outlines the duties of the Attorney General and accords him therein authority to perform all duties appropriate to his office. This is clearly declaratory of the common law.
In the Kress case, supra, this Court agreed the Attorney General could institute proceedings in the nature of quo warranto to oust S.H. Kress Company, a foreign chain store corporation, from continuing to engage in business in the state because the Attorney General alleged the company's chain store operation was unfair competition in restraint of trade inimical to the interests of independent merchants of the state. He brought those proceedings primarily to subserve the interests of numerous *896 independent merchants. This Court there found as a matter of law that his initiation of such proceedings was within his common law power, being launched to protect the public interest. It did not rule on the merits of the case made by the Attorney General, but acknowledged his standing to institute the proceedings.
Other examples of the wide range of litigation subjects in which the Attorney General of this state has participated on the basis of the public interest include: railroad carrier rates, school desegregation, legislative reapportionment, suppression of illegal gambling, suppression of illegal activities of labor union business agents, and suppression of business operations of members of "organized crime." In the early 1940s the then Attorney General devoted much of the talent and energy of his office to litigation that sought to maintain the "open shop" in labor unions.
Neither the Legislature nor the courts has ever undertaken to delineate or set the outer limits of the Attorney General's litigation power, although in a few specific instances the Legislature has curtailed his role. Usually, legislative intervention has been unnecessary. In most instances the Attorney General's legal participation has been accepted by the public. In some instances, however, his legal efforts or "crusades" have been rebuffed in the courts or were abandoned because they lost public favor, being deemed unduly partisan or politically motivated. There is thus a "built-in" check on his litigation role, in addition to the legislative power to curtail it. No doubt the reason neither the Legislature nor the people have ever undertaken to delineate or set fixed limits upon the general role of the state's chief legal officer is that they consider his legal authority to cope with new problems and emergencies affecting the public interest should not be circumscribed, realizing his excesses, if any, are always subject to the checks before mentioned.
The claim of the Commission that it is the sole protector of the public in the rate-making process is unfounded. F.S. Chapter 366, F.S.A., gives it no such exclusive power. Affected consumers have the right to appear directly or by counsel in such hearings to protect their interests in the public rate-making process and, as we have indicated, the Attorney General has concomitant authority to intervene in their behalf if he deems it to be his official duty. The judiciary has a like duty in proper cases to protect the public in the rate-making process. The public utilities are franchised public monopolies, but they too have a concomitant duty to protect the interest of the public in the matter of rates.
If the Attorney General's purpose in appearing before the Commission in utility rate cases eventually turns out to be political or prompted by the desire to enhance his popularity as a public figure, it stands to reason that sooner or later his mendacious misrepresentation will be discovered by the people who elected him. In appearing before the Commission on behalf of members of the public, the Attorney General should comport himself as do legal counsel generally, being subject to the same rules governing the conduct of attorneys who appear before the Commission.
The disturbing factor here is the summary refusal ab initio of the Commission to listen to the legal contentions of the Attorney General in the instant rate case which are presumptively to be made on behalf of the public. It cut him off initially from advocating what he considers to be in the public interest of consumers in a public utility rate-making hearing on the ground he had no standing to represent them at all. The Commission's action appears to me to be a far-reaching negation of the Attorney General's historic official duty, which has long been understood by the Florida judiciary to be a prime responsibility of the state's chief legal officer.
The Commission prohibits his representation of the consumers' interest in a public utility case as a public interest concern *897 while requiring consumers to pay for the advocacy by the utility in the rate-making process. This seems to be fundamentally unfair.
In State ex rel. Olsen v. Public Service Commission, 1955, 129 Mont. 106, 283 P.2d 594, the Montana Supreme Court held the State Attorney General there could maintain an action to set aside rates fixed by the Commission for a telephone company. The court there said:
"The action taken by the attorney general questioning the reasonableness and lawfulness of the rates is a proceeding affecting public interest and properly maintainable by him."
Suits by states through their public officers, including their attorney general in the nature of "parens patriae" in behalf of their citizens have long been recognized. Compare Georgia v. Penn R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051; Pennsylvania v. West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117; Louisiana v. Texas, 176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347; State v. Pacific Express Co., 80 Neb. 823, 115 N.W. 619; Attorney General v. Delaware & B.R. Co., 27 N.J. Eq. 631, 633.
The Attorney General is in nowise impinging upon the Governor's constitutional power to see that the laws are faithfully executed or enforced in this area of his purported legal advocacy or litigation in behalf of the public interest. The Governor, of course, is not prevented from resort to the courts in seeking to perform any of his constitutional duties, but his general constitutional authority under Florida Constitution Article IV, Sections 1(a) and (b), does not exclude the Attorney General from the exercise of his traditional official historic duty of legal advocacy in behalf of the public in the courts or before quasi-judicial administrative boards or commissions absent legislative restriction to the contrary, nor does the Attorney General have to secure leave from the Governor in such advocacy. The Governor makes not the slightest complaint to the Attorney General's intervention.
I think it is appropriate to leave to the Attorney General's sound and reasonable discretion, as has always been the rule, his exercise of the right of legal advocacy in such situation, case, or instance, subject to the legislature's power to withdraw or to curtail this right wherever it sees fit, rather than for an administrative board to decide whether he can appear before it. It is better for him to abuse the authority in a rare instance than for state agencies exercising quasi-judicial authority to be held to have the power to eliminate him from appearing before them at their pleasure. This Court has always respected the authority of the Attorney General to be heard in those matters before it when he appeared alleging he represented the public interest. I agree, however, that the Attorney General should exercise great caution in the area of discretionary intervention and should be careful never to intrude in any situation unless there are strong and compelling public reasons for his action. In doubtful or debatable situations it would be the part of wisdom for him to refrain,  or to at least seek legislative direction  before he acts.
Finally, it is beyond me why the Public Service Commission is so unwilling, as a matter of public policy, to allow the legal advocacy of the Attorney General in a utility rate case. It always has the power and duty to reject his arguments in a rate case if it finds them without merit. It is not bound by his contentions nor in anywise compelled to follow his recommendations. Public policy would appear to be better served by the Commission according due deference to the historic authority of the Attorney General to legally represent the public interest before it if in his discretion he deems it advisable. This is so because rates of public utilities, franchised monopolies, which of necessity have to be paid by consuming members of the public are matters of great and widespread public concern. Moreover, the setting of utility rates *898 is a legal public process and not strictly within the private area. Accordingly, it seems to me it would be wiser and more in keeping with good public conscience and administration for the Commission to hear the Attorney General as do the courts for such "light" as he may be able to bring, rather than to arbitrarily cut him off at the threshold as a meddler.
Decisions in rate cases by the Commission would, I believe, be accepted with better grace by the people if they have the satisfaction of knowing their Attorney General had the opportunity of appearing in their behalf to present, if he saw fit, such data and advocacy as he deemed relevant and appropriate.
I agree to the conclusions reached in the majority opinion but for the reasons herein stated.