Bob Graham Governor Tallahassee
QUESTION:
May the Governor waive the sovereign immunity of the state by contract with the United States Government?
SUMMARY:
The Governor is not authorized by the Constitution or by general law to waive the sovereign immunity of the state pursuant to a contractual agreement with the United States Department of Interior in order to obtain certain privileged and proprietary information concerning oil and gas reserves adjacent to the state's seaward boundary under the Outer Continental Shelf Lands Act, as amended, 43 U.S.C. § 1331, et seq. (1979).
The Outer Continental Shelf (OCS) Lands Act, as amended on September 18, 1978, 43 U.S.C. § 1331, et seq. (1979), makes available to coastal states certain privileged and proprietary information concerning oil and gas reserves located adjacent to the states' seaward boundaries. Section 1345(e) of the act authorizes the Secretary of the Interior to enter into cooperative agreements with affected states pertaining to such matters, among other things, as the sharing of this privileged and proprietary information. Section 1352(c) requires the secretary to prescribe regulations which assure the maintenance of the confidentiality of privileged or proprietary information; and subsection (e) requires that, prior to the transmittal of any privileged information or prior to granting the state access thereto, the Secretary of the Interior and the Governor of the affected state enter into a written agreement in which the state agrees, as a condition precedent to receiving or being granted access to such information, that the state waive certain defenses specified in subsection (f) and to hold the United States harmless from any violations of the regulations prescribed by the secretary that the state or its employees may commit. The defenses the state must waive as a condition precedent as specified in s. 1352(f) are: any claim of sovereign immunity and `any claim that the employee who revealed the privileged information which is the basis of such suit was acting outside the scope of his employment in revealing such information.' Section 1352(f)(1) further provides that, whenever an employee of the state or Federal Government reveals confidential or proprietary information in violation of the regulations prescribed by the secretary, the lessee or permittee may commence a civil action for damages in the appropriate federal court against the United States or the state. The copy of the agreement you submitted along with your request incorporates these statutory requirements. You question whether the Governor has the authority, absent specific legislative authorization, to waive the sovereign immunity of the state.
The doctrine of sovereign immunity is a general principle of jurisprudence handed down to us from the common law of England. The principle that the sovereign cannot be sued without its consent applies with equal force to the several states of the Union. See 72 Am. Jur.2d States s. 99 (1974), and State ex rel. Davis v. Love, 126 So. 374 (Fla. 1930). In 81A C.J.S. States s. 298 (1977) at 942, it is stated that `[i]t is a well established rule of law that a state, by reason of its sovereignty, is immune from suit and it cannot be sued without its consent in its own courts, nor can it, under the principle of sovereign immunity, be sued without its consent in the courts of a sister state or elsewhere.' Therefore, unless the State of Florida has waived or consents to waive its sovereign immunity, the state cannot be sued by a private party either in state or federal courts. See
Aerojet-General Corp. v. Askew, 453 F.2d 819 (5th Cir. 1971); Seaboard Airline Railroad Co. v. Sarasota-Fruitville Drainage District, 255 F.2d 622 (5th Cir. 1958); and Washington v. Brantley, 352 F. Supp. 559 (M.D.Fla. 1972). In Seaboard Airline Railroad Co. v. Sarasota-Fruitville Drainage District, the Fifth Circuit Court of Appeals concluded that an indemnity agreement between the drainage district and the railroad company was void and could not be enforced because the state had not authorized the district to enter into such an agreement. Cf. s. 161.101(3), F. S., which authorizes the Department of Natural Resources to enter into indemnification agreements with `federal, state, and other local governments and political entities, or any agencies or representatives thereof, for the purpose of improving, furthering, and expediting the beach and shore preservation program.'
While a state's sovereign immunity is subject to limitations which arise from the federal nature of the United States and a state may be sued in a federal court by the United States Government or a federal agency or instrumentality (see Department of Employment v. United States, 385 U.S. 355 (1966), and Monaco v. Mississippi,292 U.S. 313 (1934)), no question involving this complex federal-state interrelationship is raised. The contractual agreement between the Department of Interior and the State of Florida provides, and s. 1352 of the OCS Lands Act requires, that the lessee or permittee who supplied the privileged information may commence a civil suit for damages against the Federal Government or the state if such information is revealed and that the state waive its defense of sovereign immunity and the defense that the employee who revealed the information was acting outside the scope of his employment in revealing such information in a suit commenced against the Federal Government or the affected state. 43 U.S.C. § 1352(e) and (f) (1979). See Palmer v. Ohio, 248 U.S. 311, (1918), in which the Supreme Court stated that the right of a private individual to sue a state in either a federal or state court cannot be derived from the United States Constitution or laws of the United States, but can only come from the consent of the state; and see Seaboard Airline Railroad Co., supra.
Section 13, Art. X of the State Constitution, formerly s. 22, Art. III, State Const. 1885, provides that `[p]rovision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.' The well-established principle of expressio unius est exclusioalterius is applicable to this constitutional provision. This principle requires that, when the Constitution expressly provides the manner in which a thing is to be done, then it impliedly prohibits the thing from being done in a different manner. While the Constitution does not in express terms prohibit the doing of a thing in a different manner, the fact that the Constitution has prescribed the manner in which the subject matter shall be done is itself a prohibition against a different manner of doing it. SeeIn re Advisory Opinion of Governor Civil Rights, 306 So.2d 520
(Fla. 1975); State ex rel. Davis v. Love, 126 So. 374 (Fla. 1930); and Weinberger v. Board of Public Instruction of St. Johns County,112 So. 253 (Fla. 1927). A number of judicial decisions have expressly ruled on this constructional provision, or its identical predecessor in the 1885 State Constitution. See Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources,339 So.2d 1113 (Fla. 1976); Davis v. Watson, 318 So.2d 169 (Fla. 1975); Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968); State exrel. Davis v. Love, 126 So. 374 (Fla. 1930); and Hampton v. State Board of Education, 105 So. 323 (Fla. 1925).
In Suits v. Hillsborough County, 2 So.2d 353 (Fla. 1941), the Florida Supreme Court stated that `[t]he only way that the State can give its consent to be made a party defendant to a suit is by legislative act . . . .' Florida courts have frequently interpreted the language of s. 13 of Art. X, State Const., as continuing absolute sovereign immunity for the state, absent waiver by legislative enactment or constitutional amendment. See Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources supra; Spangler v. Florida State Turnpike Authority,106 So.2d 421 (Fla. 1958); and Buck v. McLean, 115 So.2d 764 (1 D.C.A. Fla., 1959). Further, such waiver of sovereign immunity must be effectuated by a general law of the Legislature; such waiver cannot be accomplished by special or local law. See Arnold v. Shumpert, supra; State ex rel. Davis v. Love, supra; and Davis v. Watson, supra. Therefore, the power to waive the state's sovereign immunity is vested exclusively in the Legislature. If only the Legislature has the constitutional authority to waive the state's sovereign immunity, it necessarily follows that neither the Governor nor any other state agency or officer can waive the state's sovereign immunity, by contract or otherwise, absent specific legislative authorization therefor in the form of a general law.
The courts are without jurisdiction over suits commenced against the state for breach of contract, unless the state has given its consent. See, e.g., Cone v. Wakulla County, 197 So. 536 (Fla. 1940), and Hampton v. State Board of Education, 105 So. 323 (Fla. 1925). In Hampton v. State Board of Education at 328, the Florida Supreme Court stated that `where the suit involves a contract or property right of the state . . . [such suit] cannot be maintained in so far as it affects property rights of the state, or seeks to enforce a contract made by or for the state, unless the consent of the state be duly given.' In Venezia A, Inc. v. Askew,363 So.2d 367 (1 D.C.A. Fla., 1978), the court dismissed an action brought against the Governor for damages for breach of contract, holding that the doctrine of sovereign immunity barred recovery. In AGO 078-20, my predecessor in office determined that, in the absence of a general law which authorizes a state agency to enter into an indemnification agreement which imposes liability on the state, such contracts are nugatory and unenforceable against the state or its agencies. See also Seaboard Airline Railroad Co., supra. Attorney General Opinion 076-188.
You have not brought to my attention, nor has my research revealed, any general law which purports to vest the Governor with the authority to waive the sovereign immunity of the state pursuant to an agreement entered into under the OCS Lands Act. In the absence of such legislation, I am compelled to conclude that the Governor does not have such authority.
The State Constitution requires specific, clear, and unambiguous language in a statute in order to waive the sovereign immunity of the state. See Manatee County v. Town of Longboat Key,365 So.2d 143 (Fla. 1978). Furthermore, the power of the state to contract is a legislative prerogative, and any residual power or authority not expressly provided or limited by the State Constitution is vested in the legislative branch. See 16 Am. Jur.2d ConstitutionalLaw s. 318, et. seq., (1979); 10 Fla. Jur.2d Constitutional Law s. 141, et. seq., (1979); and AGO's 071-28 and 068-44. The Governor has no prerogative powers but possesses only such powers and duties as are vested in him by constitutional or statutory grant; therefore, the Governor and other executive officers of the state have no general or inherent authority to contract in the state's behalf or to waive the sovereign immunity of the state, and they can bind the state by contract only within the power specially conferred on them by law. See C.J.S. States ss. 130, 156 (1977); Edgerton v. International Company, Inc., 89 So.2d 488 (Fla. 1956); Florida Industrial Commission ex rel. Special Disability Fund v. National Trucking Company, 107 So.2d 397 (1 D.C.A. Fla., 1959); and AGO 071-28.
Prepared by: Craig B. Willis, Assistant Attorney General