766 So.2d 1186 (2000)
Nicholas V. KLONIS, Appellant,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Appellee.
No. 1D99-3736.
District Court of Appeal of Florida, First District.
September 15, 2000.
*1187 Marie A. Mattox of Mattox & Hood, P.A., Tallahassee, for Appellant.
Richard E. Johnson for Amicus Curiae National Employment Lawyers Association, Florida Chapter, Tallahassee.
Gwendolyn P. Adkins and Holly A. Dincman of Cooper, Coppins & Monroe, P.A., Tallahassee; Patrick Loebig, Assistant General Counsel, Tallahassee, for Appellee.
BROWNING, J.
Nicholas V. Klonis, the plaintiff in the lower tribunal, appeals an order granting the appellee's (Florida Department of Revenue) motion to dismiss Klonis's complaint. The appellant contends that the lower court erred, as a matter of law, in concluding that his claim for relief against an agency of the State of Florida pursuant to the Florida Civil Rights Act of 1992 (F.C.R.A.), Chapter 760, Florida Statutes (1997), is barred by the doctrine of sovereign immunity. Finding that sovereign immunity stripped the court of subject-matter jurisdiction, the trial court dismissed the appellant's complaint with prejudice and entered a final judgment in favor of the defendant/appellee. Although the appellant's claim purportedly was disposed of on jurisdictional grounds, the trial court also found that even if sovereign immunity were inapplicable, the appellant had failed to state a cause of action against the appellee. Concluding that the Florida Legislature has unequivocally waived the defense of sovereign immunity for claims brought under the F.C.R.A., we reverse the trial court's order and final judgment and remand for further proceedings.[1] Although we affirm the lower court's finding that the complaint fails to state a cause of action against the appellee, we remand with instructions to give the appellant an opportunity to amend his complaint.
The F.C.R.A. prohibits discrimination, as well as retaliation, by an employer on the basis of an individual's race, color, religion, sex, national origin, age, handicap, or marital status. § 760.10(1) & (7), Fla. Stat. (1997). In his complaint, Klonis generally alleged that he "is a member of a class protected by law because of his handicap/disability, a psychological/medical condition, which limits one or more of [his] major life activities or because of his perceived disability/handicap." He alleged that he had satisfied all conditions precedent to filing this action by filing a charge affidavit of discrimination with the Florida *1188 Commission on Human Relations (Commission), by waiting the requisite number of days before filing this action, and by timely filing this action within 545 days of the date his charge affidavit was filed. Klonis alleged that the appellee is an "employer" within the meaning of the F.C.R.A. § 760.02(7), Fla. Stat. (1997). He alleged that he was employed with the appellee, an agency of the State of Florida, in 1987 in an O.P.S. position, and that in February 1988, he received a full-time career service position with the appellee. In August 1995, he was assaulted in the appellee's parking lot while on his way to work. In late July 1996, he sustained another work-related injury when he fell in a men's restroom within the appellee's facility and injured his arm and other parts of his body. After his fall, Klonis allegedly attempted to work full-time but was unable to do so because of his injuries. In 1996-97, his treating professionals opined that Klonis could work only four hours each day in an office setting due to his medical condition. Specifically and without limitation, in March and April 1997, his treating physicians wrote medical excuses for Klonis to present to the appellee, advising the employer that Klonis could work only four hours per day in an office setting. Klonis alleged that he had presented these medical excuses to the appellee and had requested, in accordance with the physicians' statements, permission to work four hours each day in his office and an additional four hours each day in his residence. The appellee denied these accommodations. Allegedly, the appellee terminated Klonis on or around May 28, 1997, "for contrived reasons" and concluded that a legitimate reason existed to deny the requested accommodation of a split eight-hour workday. Klonis claims there was no legitimate reason to deny his request for accommodations.
The complaint alleged further that after making his request for accommodations and trying to work with the appellee to get it to recognize and abide by his medical needs, Klonis was subjected to a hostile work environment on the basis of his disability or perceived disability. The appellee allegedly demanded that Klonis work a full eight-hour day in the office. Ultimately, he was cited for the following offenses which, according to the appellee, justified the termination: excessive absenteeism, insubordination, conduct unbecoming a public employee, disruptive conduct, falsification of records; offensive, profane, abusive or threatening language; and other violations of law, rules, policies, or procedures of the appellee. Klonis alleged that notwithstanding his handicap/disability, he still was able properly to perform the essential job duties and responsibilities of his position with the appellee; but that despite his proper performance of his duties and his qualifications for the position held with the appellee, he was terminated after requesting the above-noted accommodations.
Count One of the complaint is a claim based on "handicap/disability discrimination" or discrimination based on the appellant's perceived handicap/disability. It is alleged that as a direct and proximate cause of the appellee's willful, wanton and malicious acts, the appellant has sustained damages for the loss of his employment, as well as the security and peace of mind it provided him. Klonis alleged that he has sustained mental, nervous, and emotional injury; and has incurred additional damages including lost wages, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other attendant damages. He demanded judgment against the appellee for damages, costs, attorney's fees, and any other just and proper relief.
Count Two of the complaint is a claim of retaliation by the appellee after the appellant engaged in protected activities. The retaliation allegedly took the form of the appellee's contriving unfounded allegations against the appellant and terminating his employment. Klonis alleged that the appellee knew or should have known of the offensive working conditions to which he was subjected, for the employer was notified of the improprieties and yet harbored ill motives and participated in the adverse and retaliatory treatment of him. The complaint alleged that the appellee exercised *1189 control over the adverse treatment of the appellant or, alternatively, that the appellee failed to maintain proper supervision of its employees, thereby causing foreseeable harm to the appellant's rights. As a direct and proximate result of the appellee's retaliatory conduct, the appellant allegedly suffered extreme emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, lost wages, and the loss of his employment and the emoluments thereof. The complaint demanded judgment against the appellee for damages, injunctive relief, back and front pay together with interest, any other benefits attendant to the position, costs, attorney's fees, and any other just and proper relief.
The trial court found that the doctrine of sovereign immunity deprived the court of subject-matter jurisdiction over the instant claims. Although "at one time suits such as this would have been dismissed for lack of subject matter jurisdiction without regard to the merits of the underlying claim," Department of Education v. Roe, 679 So.2d 756, 758 (Fla.1996), the limited waiver of sovereign immunity embodied in section 768.28, Florida Statutes (1973), as well as the waiver embodied in the F.C.R.A., now means that the trial court had jurisdiction to determine whether the defense of sovereign immunity applies to Appellant's claims. See id.; Michigan Millers Mutual Ins. Co. v. Bourke, 607 So.2d 418 (Fla.1992); State Dep't of Transportation v. Caffiero, 522 So.2d 57, 58 (Fla. 2d DCA 1988) (characterizing sovereign immunity as an affirmative defense).
That is, "subject-matter jurisdiction concerns the power of the trial court to deal with a class of cases to which a particular case belongs." Cunningham v. Standard Guaranty Ins. Co., 630 So.2d 179, 181 (Fla.1994) (parties cannot stipulate to jurisdiction over the subject matter where none exists, and the defense of lack of subject-matter jurisdiction can be raised anytime); Lovett v. Lovett, 93 Fla. 611, 112 So. 768 (1927). "Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." Art. X, § 13, Fla. Const.; State v. Love, 99 Fla. 333, 126 So. 374 (1930). The appellant rightfully concedes that the immunity of the State of Florida and its agencies from liability for claims arising under Florida law or common law is "absolute ... absent waiver by legislative enactment or constitutional amendment." See Circuit Court of Twelfth Judicial Circuit v. Department of Natural Resources, 339 So.2d 1113, 1114 (Fla.1976); Jackson v. Palm Beach County, 360 So.2d 1 (Fla. 4th DCA 1978); Buck v. McLean, 115 So.2d 764 (Fla. 1st DCA 1959). Unquestionably, the Florida Legislature has the constitutional power to enact laws waiving sovereign immunity. See, e.g., section 768.28, Florida Statutes (1973). Thus, the trial court had jurisdiction over Appellant's claims to determine whether the State of Florida sufficiently waived the defense of sovereign immunity for claims brought solely under the F.C.R.A.[2] Review of this pure question of law is de novo.
Although a waiver of sovereign immunity by legislative enactment must be clear, specific, and unequivocal, see Spangler v. Florida State Turnpike, 106 So.2d 421, 424 (Fla.1958), no particular magic words are required. In analyzing the wording of the F.C.R.A., we must presume that the Florida Legislature stated in Chapter 760 what it meant, and meant what it said. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992). If the statutory wording is unambiguous, then judicial inquiry is complete. Germain, 503 U.S. at 255, 112 S.Ct. at 1150, 117 L.Ed.2d at 398. In accordance with proper practice in reviewing the provisions of a statute, including the F.C.R.A., we look "to the provisions of the whole law, and to its object and policy," rather than consider various statutory subsections in isolation from one another and out of context. *1190 See Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).
We agree with the appellant's position that several sections of the F.C.R.A., taken together, clearly demonstrate a legislative intent to allow suits against the State of Florida and any of its agencies, such as the appellee. First, the F.C.R.A. makes it an unlawful employment practice for "an employer" to discriminate or retaliate against an individual because of such individual's handicap or any other factor enumerated, supra. See § 760.10, Fla. Stat. (1997). Second:
"Employer" means any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person.
§ 760.02(7), Fla. Stat. (1997) (emphasis added). Third, the statutory definition of "person" expressly includes "the state" or "any governmental entity or agency." § 760.02(6), Fla. Stat. (1997). Fourth, in the event the Commission determines there is reasonable cause to think that a discriminatory practice has occurred in violation of the F.C.R.A., "the aggrieved person" may request an administrative hearing or, like the appellant, may bring a civil action "against the person named in the complaint in any court of competent jurisdiction." § 760.11(4)(a), Fla. Stat. (1997). Fifth, the Florida Legislature expressly provided that "the state and its agencies and subdivisions shall not be liable for punitive damages," while "[t]he total amount of recovery against the state and its agencies and subdivisions shall not exceed the limitation as set forth in s. 768.28(5)." § 760.11(5), Fla. Stat. (1997) (emphasis added). The cross-referenced provision, section 768.28(5), Florida Statutes (1997), immunizes "the state and its agencies and subdivisions" from punitive damages and places limits on compensatory damages. Sixth:
In any civil action or administrative proceeding brought pursuant to this section, a finding that a person employed by the state or any governmental entity or agency has violated s. 760.10 shall as a matter of law constitute just or substantial cause for such person's discharge.
§ 760.11(15), Fla. Stat. (1997). These provisions in Chapter 760 demonstrate that the Florida Legislature contemplated and intended the possibility that the State of Florida and its subdivisions would be sued as a "person" as defined in the statute. The immunity given to the State of Florida and its subdivisions regarding punitive damages, and the language merely limiting but not precluding other types of damages, certainly evinces a clear, unambiguous legislative intent that agencies such as the appellee could, and would, be named as defendants in Chapter 760 claims and would be liable for damages. In sum, the Florida Legislature intended to waive, and did waive, the State of Florida's sovereign immunity under Chapter 760. See Hazel v. School Bd. of Dade County, 7 F.Supp.2d 1349 (S.D.Fla.1998) (order on motion to dismiss complaint) (complaint of female employee of high school against county school board alleging discrimination by male principal stated a claim under the F.C.R.A.).
For the reasons set out above, we reverse the trial court's order and final judgment insofar as it holds that the defense of sovereign immunity necessarily bars a discrimination/retaliation claim brought against the appellee, an agency of the State of Florida, pursuant to the F.C.R.A. We affirm that portion of the order and final judgment dismissing the complaint for failure to state a cause of action against the appellee, and we remand with instructions to allow the appellant to amend his complaint.
REVERSED in part, AFFIRMED in part, and REMANDED with directions.
JOANOS and PADOVANO, JJ., CONCUR.
NOTES
[1] We note that shortly before our opinion was released, our sister court made a similar holding as to the waiver of sovereign immunity. See Jones v. Brummer, 766 So.2d 1107 (Fla. 3d DCA 2000).
[2] The complaint is founded entirely upon Chapter 760, Florida Statutes.