ROTHENBERG, J.
 

 The City of Key West (“the City”) appeals the trial court’s order granting final summary judgment to Florida Keys Community College (“the College”), in which the trial court: (1) determined that the College enjoys sovereign immunity from the City’s imposition
 
 [1]
 
 of stormwater utility fees; and (2) directed the City to refund the stormwater utility fees paid by the College. We affirm.
 

 In 2001, pursuant to the authority derived from sections 403.0891 and 408.0893, Florida Statutes, the City enacted Ordinance No. 01-06, creating a stormwater utility system, and establishing stormwater utility fees to fund the system. The stormwater utility fees apply to all developed property throughout the City’s municipal area, including North Stock Island, where the College’s main campus is located.
 

 The City has no operational stormwater system on the College’s property, and has not identified any of the City’s facilities that collect or treat stormwater generated by the College’s property. The College’s property is accessed via College Road, which is owned by the City. College Road is elevated, and loops around North Stock Island and, consequently, provides a boundary that keeps stormwater runoff generated on the island within the College Road loop, and directs the runoff generated outside the loop into the Gulf of Mexico.
 

 The College, which is organized and operated under Florida law, collects and treats any stormwater generated on its property with its own stormwater system, operated under a valid permit issued by the South Florida Water Management District. There is no written contract or agreement between the City and the College obligating the College to pay the City’s stormwater utility fees. Nonetheless, after establishing the stormwater utility, the City billed the College for storm-water utility services. To date, under threat of enforcement penalties, including litigation, the imposition of attorney’s fees for collection, a five percent per month late fee, liens, the discontinuation of utility services, and the denial of City permits, the College has paid $160,529.60 in stormwater utility fees.
 

 The College filed the action below, seeking, among other things, a declaration that the College enjoys sovereign immunity with respect to the City’s stormwater utility fees. During the litigation, the College filed a motion for final summary judgment, which the trial court granted upon determining that the College is protected by sovereign immunity, and ordered the City to refund the $160,529.60 paid by the College in utility fees. This appeal followed.
 

 On appeal, the City contends that the trial court erred in granting the College’s motion for summary judgment because the State of Florida has waived sovereign immunity with respect to the City’s stormwa-ter utility fees. The City also challenges
 
 *497
 
 the trial court’s determination that the College is entitled to a refund for the stormwater utility fees it has paid because: (1) sovereign immunity is a “shield” rather than a “sword”; and (2) the College submitted payment for the stormwater utility fees “voluntarily.” We entirely agree with the trial court’s findings and are unpersuaded by the City’s arguments to the contrary.
 

 THE COLLEGE ENJOYS SOVEREIGN IMMUNITY FROM SUIT FOR NON-PAYMENT OF THE CITY’S STORMWATER UTILITY FEES.
 

 The City does not dispute that the College is a state entity which, absent waiver, is entitled to sovereign immunity. The City, however, contends that in Chapters 403 and 180, Florida Statutes (2009), the Florida Legislature has waived sovereign immunity with respect to the imposition of stormwater fees. We disagree.
 

 “The doctrine of sovereign immunity, which provides that a sovereign cannot be sued without its own permission, ... was a part of the English common law when the State of Florida was founded and has been adopted and codified by the Florida Legislature.”
 
 Am. Home Assurance Co. v. Nat’l R.R. Passenger Corp.,
 
 908 So.2d 459, 471 (Fla.2005) (citing § 2.01, Fla. Stat. (2004)). Despite the doctrine’s expansive safeguards, “the Florida Constitution provides that the Legislature can abrogate the state’s sovereign immunity.”
 
 Id.
 
 (citing Art. X, § 13, Fla. Const.). However, “any waiver of sovereign immunity must be clear and unequivocal,” and, therefore, “waiver will not be found as a product of inference or implication.”
 
 Am. Home Assurance Co.,
 
 908 So.2d at 472. As a consequence, Florida courts must “strictly construe” any alleged legislative waiver of sovereign immunity.
 
 Id.
 
 Based on this standard, we conclude that the State of Florida has not waived sovereign immunity with respect to stormwater utility fees.
 

 Chapter 403 does not waive sovereign immunity with respect to the City’s stormwater utility.
 

 Under the mandate of section 403.0891, Florida Statutes (2009), local governments, including the City, are required to develop stormwater programs that are compatible with those developed by the Department of Environmental Protection and other local governmental entities. To fulfill this responsibility, the City enacted ordinance No. 01-06, which established a stormwater utility and utility fees, pursuant to the authority granted to the City by section 403.0893, which states, in pertinent part:
 

 In addition to any other funding mechanism legally available to local government to construct, operate, or maintain stormwater systems, a county or municipality may:
 

 (1) Create one or more stormwater utilities and adopt stormwater utility fees sufficient to plan, construct, operate, and maintain stormwater management systems set out in the local program required pursuant to s.403.0891(3)[.]
 

 The City contends that the College is not protected by sovereign immunity because Chapter 403 does not “exempt” state-owned property from payment of stormwater utility fees. However, the City confuses waiver of sovereign immunity with exemption. Under Florida law, sovereign immunity is fundamentally different from the protection provided by an exemption. Whereas “sovereign immunity is the rule, rather than the exception,”
 
 Pan-Am Tobacco Corp. v. Dep’t of Corrs.,
 
 471 So.2d 4, 5 (Fla.1984), the converse is true of an exemption. Importantly, while an exemption must be expressly granted,
 
 *498
 
 the State enjoys sovereign immunity unless immunity is expressly waived. Thus, the Legislature’s inaction does not constitute a waiver of sovereign immunity. Because Chapter 403, which specifically relates to stormwater utility fees, does not expressly waive sovereign immunity for stormwater utility fees, it is clear that the State has not waived sovereign immunity in Chapter 403.
 

 Chapter 180 does not waive sovereign immunity with respect to the City’s stormwater utility.
 

 Although the City concedes that its stormwater utility was enacted under Chapter 403, it contends Chapter 180’s waiver of sovereign immunity as to certain utilities also applies to the City’s stormwa-ter utility. In support of its position, the City relies on section 180.13(2), Florida Statutes (2009), which provides as follows:
 

 The city counsel, or other legislative body of the municipality, by whatever name known, may establish just and equitable rates or charges to be paid to the municipality for the use of the utility by each person, firm or corporation whose premises are served thereby; and provided further, that if the charges so fixed are not paid when due, such sums may be recovered by the said municipality by suit in a court having jurisdiction of said cause or by discontinuance of service of such utility until delinquent charges for services thereof are paid....
 

 (Emphasis added). Relying on the above contentions, and the fact that the First District in
 
 City of Gainesville v. Florida Department of Transportation,
 
 778 So.2d 519, 529 (Fla. 1st DCA 2001)
 
 (“Gainesville I”)
 
 concluded that the word “person” in section 180.13 includes “state agencies,” the City argues that section 180.13 authorizes the City to recover the College’s unpaid stormwater utility fees “by suit in court” and, therefore, expressly waives sovereign immunity.
 

 We conclude that Chapter 180, and specifically section 180.13, does not apply to stormwater utilities. Chapter 403 and Chapter 180 serve different purposes: while Chapter 403 governs “Pollution Control,” Chapter 180 governs “Municipal Public Works.” Although these broad subjects are clearly related on certain levels, the statutory provisions of these Chapters are not interchangeable. More importantly, section 180.06, Florida Statutes (2009), which specifically lists the utility services within the ambit of Chapter 180, does not include stormwater utility services.
 

 Any municipality or private company organized for the purposes contained in this chapter, is authorized:
 

 (1) To clean and improve street channels or other bodies of water for sanitary purposes;
 

 (2) To provide means for the regulation of the flow of streams for sanitary purposes;
 

 (3) To provide water and alternative water supplies, including, but not limited to, reclaimed water, and water from aquifer storage and recovery and desalination systems for domestic, municipal or industrial uses;
 

 (4) To provide for the collection and disposal of sewage, including wastewater reuse, and other liquid wastes;
 

 (5) To provide for the collection and disposal of garbage;
 

 (6) And incidental to such purposes and to enable the accomplishment of the same, to construct reservoirs, sewerage systems, trunk sewers, intercepting sewers, pumping stations, wells, siphons, intakes, pipelines, distribution systems,
 
 *499
 
 purification works, collection systems, treatment and disposal works;
 

 (7) To construct airports, hospitals, jails and golf courses, to maintain, operate and repair the same, and to construct and operate in addition thereto all machinery and equipment;
 

 (8) To construct, operate and maintain gas plants and distribution systems for domestic, municipal and industrial uses; and
 

 (9) To construct such other buildings and facilities as may be required to properly and economically operate and maintain said works necessary for the fulfillment of the purposes of this chapter.
 

 Because: (1) there is no mention of stormwater utility services in this section; (2) the City expressly enacted its stormwa-ter utility under Chapter 403; (3) Chapter 180 does not expressly waive sovereign immunity; and (4) sovereign immunity must be expressly waived, we find that the waiver of sovereign immunity as to certain enumerated utilities in section 180.13 cannot and does not by inference apply to the City’s stormwater utility fees.
 
 See also City of Gainesville v. Fla. Dep’t of Transp.,
 
 920 So.2d 53 (Fla. 1st DCA 2006),
 
 cert. denied,
 
 935 So.2d 1219 (Fla.2006)
 
 (“Gainesville III
 
 ”) (rejecting a similar argument; finding that “chapter 180 does not provide a waiver of sovereign immunity for utilities authorized pursuant to chapter 403,” such as stormwater utilities; and stating, “chapter 180 has a very specific listing of the municipal services included within its scope. One municipal service not included in that list is stormwater runoff. The Legislature, for whatever reason, decided not to include stormwater runoff within the scope of chapter 180.”).
 

 Alternatively, the City contends that even if stormwater utility services were not originally included in Chapter 180, the 2006 addition of section 180.03(3) brought stormwater utilities within the purview of Chapter 180, and, therefore, section 180.13’s waiver of sovereign immunity now applies to stormwater utility fees. We respectfully disagree.
 

 As part of the 2006 amendment, the addition of section 180.03(3) was presented and adopted as an act “requiring municipalities to conduct certain studies for the construction of a new proposed sewerage system or the extension of an existing sewerage system prior to the adoption of certain resolutions or ordinances.” Ch. 2006-252, Laws of Fla. (emphasis added). Specifically, section 180.03(3) mandates that when constructing or extending certain sewerage systems, a study must be conducted that involves “consideration of the local authority’s obligations ... for water body cleanup and protection under state or federal programs, including requirements for water bodies listed under s. 303(d) of the Clean Water Act ....”
 
 [2]
 
 (emphasis added).
 

 In arguing that the addition of this provision places the City’s stormwater utility within the ambit of Chapter 180, the City emphasizes the language referring to a local authority’s obligations for “water body cleanup and protection.” This reference, however, is merely peripheral the provision’s primary focus is plainly the construction or extension of a sewerage system, a utility that, unlike the City’s stormwater utility, is expressly authorized
 
 *500
 
 under Chapter 180.
 
 See
 
 § 180.06. Further, the only action authorized by section 180.03(3) that is arguably related to the City’s stormwater utility is merely the consideration of a local authority’s obligations for “water body cleanup and protection,” and such consideration is only required as part of a “study” which must be conducted prior to the construction or extension of certain sewerage systems.
 

 Thus, unlike section 180.06, which authorizes municipalities and certain private companies to “provide,” “construct,” “clean,” and “improve” the specified utilities enumerated in that section, section 180.03(3) does not authorize any action whatsoever that relates directly to storm-water utilities. Accordingly, this peripheral and indirect reference to a local authority’s obligations “for water body cleanup and protection” cannot be said to bring the City’s stormwater utility within the scope of Chapter 180.
 

 THE COLLEGE IS ENTITLED TO A REFUND FOR THE STORMWA-TER UTILITY FEES IT INVOLUNTARILY PAID UNDER PROTEST.
 

 The City claims the trial court erred by granting the College a full refund of the monies it paid to the City pursuant to the City’s demand for payment of stormwater user fees. The City argues that while the doctrine of sovereign immunity may be used as a “shield from suit,” it may not be used as a sword. While we agree with this general proposition, we conclude it is not applicable here, as the trial court did not rely on the doctrine of sovereign immunity in ordering the refund. Rather, the trial court granted the refund based on its determination that the “College’s payment was made due to a mutual mistake of law or under reservation of the right to seek a refund.”
 

 The City also contends that “under Florida law, if a party pays a fee or tax voluntarily, it may not later seek a refund”; notes that it raised as an affirmative defense that the College paid the stormwater utility fees “voluntarily”; and argues that the College did not overcome that defense because “no evidence was presented in support of the [City’s] motion for summary judgment demonstrating that the fees were not paid voluntarily.” The record, however, does not support this argument, as it clearly reflects that the College paid the fees under threat of the imposition of significant penalties and under protest.
 

 The Florida Supreme Court, in
 
 Jefferson County v. Hawkins,
 
 23 Fla. 223, 2 So. 362 (1887), laid the foundation for Florida’s voluntary payment doctrine, stating:
 

 [M]oney voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant, or mistook the law, as to his liability.... [Tjhere must be ... some compulsion or coercion attending its assertion which controls the conduct of the party making the payment. To constitute such compulsion or coercion as will render payment involuntary, there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money.
 

 (Emphasis added). A payment is considered to have been tendered “involuntarily” if payment is demanded, and the potential consequences of non-payment are sufficiently severe so as to leave little or no choice but to tender payment.
 
 See, e.g., Seaboard Air Line Ry. Co. v. Allen,
 
 82 Fla. 191, 89 So. 555, 557 (1921) (determin
 
 *501
 
 ing that payment tendered in order to avoid seizure of property was involuntary because “the plaintiff was constrained to pay in order to avoid further ills and to continue the operation of its business .... ”);
 
 N. Miami v. Seaway Corp.,
 
 151 Fla. 301, 9 So.2d 705, 706 (1942) (holding that “[w]here the levy of an illegal tax may become a cloud upon the title to real estate, payment of the tax to avoid a cloud on the real estate or to avoid the imposition of substantial burdens upon property rights of the owner is not a voluntary payment”);
 
 Broward Cnty. v. Mattel,
 
 397 So.2d 457, 459-60 (Fla. 4th DCA 1981) (explaining that “[pjayment of an illegal tax, even without protest, in order to avoid forfeiture of the right to do business is not a voluntary payment”).
 

 Contrary to the City’s position, the record reflects that the College submitted a sworn affidavit executed by Dr. John Ke-hoe, the College’s Financial Vice President, specifically demonstrating that the fees were not paid voluntarily. In his affidavit, Dr. Kehoe averred that “the College objected to the City’s demand for payment,” but paid the fees after the City “threatened to exercise enforcement measures against the College,” if the College did not pay the stormwater utility fees, “including hens, discontinuance of utility services, a five percent (5%) per month late fee, and the imposition of attorney’s fees for collection.” Dr. Kehoe stated that it was only as a result of this pressure that the College submitted stormwater utility fee payments to the City “under protest and without waiving its objection to the imposition of the stormwater usage ‘fee.’ ” Dr. Kehoe’s affidavit was unrefuted by the City.
 

 Because the threat of litigation, liens, the discontinuance of utility services, the denial of city permits, and the imposition of a five percent per month late fee and attorney’s fees was enough to severely disrupt, if not debilitate, the financial operation of this small State institution, we conclude that the College’s payment of the demanded fees was involuntary. We, therefore, find no error in the trial court’s order granting the College a refund of the fees it paid pursuant to the City’s demand.
 

 Affirmed.
 

 [1]
 

 . As a technical matter, we note that the trial court’s use of the word "imposition” was ill-advised, as sovereign immunity serves to protect the State from suit for non-payment of the City’s stormwater utility fees, rather than the imposition of such fees. However, the City has not objected to the trial court's loose use of language, and, therefore, waives any such argument. We, therefore, interpret the trial court’s determination to mean that the College enjoys sovereign immunity from suit for non-payment of the City’s stormwater utility fees.
 

 [2]
 

 . Section 303(d) of the Clean Water Act is found at 33 U.S.C. § 1313(d) (2000), titled: "Identification of areas with insufficient controls; maximum daily load; certain effluent limitations revision." This section calls on states to identify certain standards relating to water body controls that are “not stringent enough,” and to establish new standards. The term "stormwater utility” is not referenced in this section.