# Third District Court of Appeal

## State of Florida

Opinion filed February 24, 2021.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D20-1128
Lower Tribunal No. 17-672

————————

**The School Board of Miami-Dade County, Florida,**
Appellant,

vs.

**The City of Miami Beach, Florida,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Walter J. Harvey, School Board Attorney; Brett Little P.A., and Susan M. Seigle (Gainesville), for appellant.

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., and Michael T. Burke (Fort Lauderdale), for appellee.

Before LOGUE, LOBREE, and BOKOR, JJ.

LOGUE, J.

In the underlying case, the City of Miami Beach sued the School Board of Miami-Dade County to demand the School Board pay municipal stormwater utility fees. The School Board moved to dismiss on the basis that sovereign immunity barred the City's claim. The trial court denied the motion to dismiss and the School Board now appeals that nonfinal order. We conclude that this case is governed by our prior precedent of City of Key West v. Florida Keys Community College, 81 So. 3d 494 (Fla. 3d DCA 2012), in which we held that a community college is protected by sovereign immunity from paying municipal stormwater utility fees because Chapters 180 and 403, the current expressions of the Legislature's authorizations for municipalities to levy such fees, did not waive sovereign immunity. Accordingly, we reverse.

## FACTS AND PROCEDURAL HISTORY

Like other municipalities in Florida, the City of Miami Beach is empowered to create a stormwater utility program and to collect stormwater utility fees. As the Supreme Court explained:

> Stormwater runoff may cause flooding and threatens water quality in urban areas. Therefore, stormwater must be collected, conveyed, treated, and disposed of. Florida law requires local governments to establish stormwater management programs. To fund such programs, local governments may "[c]reate one or more stormwater utilities and adopt stormwater utility fees sufficient to plan, construct, operate, and maintain stormwater

2

management systems set out in the local program required pursuant to [section] 403.0891(3)."

City of Gainesville v. State, 863 So. 2d 138, 141 (Fla. 2003) (internal citations omitted). Chapter 403 contains an express authorization in this regard that includes the power to fund

> a stormwater management program by assessing the cost of the program to the beneficiaries based on their relative contribution to its need. It is operated as a typical utility which bills services regularly, similar to water and wastewater services.

§ 403.031(17), Fla. Stat. (2020).

In 1996, pursuant to sections 403.0891 and 403.0893, Florida Statutes, the City created its stormwater management system funded by stormwater utility fees assessed on owners of developed property within the City. The City's stormwater management system collects stormwater runoff drained from developed properties. The stormwater is then transported through a network of pipes and eventually discarded into Biscayne Bay.

The School Board owns ten developed properties which operate as public schools in the City. The School Board uses the City's stormwater management system to drain stormwater runoff from its ten properties. There is no written contract or agreement between the City and the School Board for the payment of stormwater utility fees. Nevertheless, the School Board had paid stormwater utility fees assessed by the City for many years.

3

In May 2012, the School Board stopped paying the City stormwater fees after this Court issued its decision in <u>Florida Keys Community College</u>, which held that a community college, a state entity, enjoyed sovereign immunity from suit for non-payment of the City of Key West's stormwater utility fees whether the municipality claimed Chapter 180 or Chapter 403 as the basis of its authority to charge a stormwater utility fee. 81 So. 3d at 497–98.

The City then sued the School Board to collect the stormwater utility fees. As mentioned above, the School Board moved to dismiss on the grounds of sovereign immunity. The trial court denied the motion and specifically found the School Board "is not entitled to sovereign immunity as a matter of law pursuant to Section 166.042, Florida Statutes and Section 167.01, Florida Statutes (1971)." The School Board timely appealed.

## ANALYSIS

We have jurisdiction to review appeals of nonfinal orders that "deny a motion that . . . asserts entitlement to sovereign immunity." Fla. R. App. P. 9.130(a)(3)(F)(iii). Based on the newly amended rule, "our jurisdictional inquiry now focuses not on the challenged order, but rather on the motion that the order adjudicates." <u>City of Sweetwater v. Pichardo</u>, 45 Fla. L. Weekly D2756 (Fla. 3d DCA Dec. 9, 2020).

4

Although a stormwater utility fee is not a tax, but is instead a user fee that a party can avoid by declining to use the service that the fee funds, City of Key West v. Key West Golf Club Homeowners, 228 So. 3d 1150, 1155 (Fla. 3d DCA 2017), the district courts have uniformly held that State entities that use a municipal stormwater utility infrastructure to manage their stormwater runoff have sovereign immunity from being charged stormwater utility fees and such immunity has not been waived by either Chapter 180 or Chapter 403, the current legislative expressions of the municipal authority to charge stormwater utility fees.

In Florida Keys Community College, for example, this Court rejected the City of Key West's argument that the Legislature had waived sovereign immunity in Chapters 403 and 180 "with respect to imposition of stormwater fees." 81 So. 3d at 497. This Court reasoned "the waiver of sovereign immunity as to certain enumerated utilities in section 180.13 cannot and does not by inference apply to the City's stormwater utility fees." Id. at 498–99. And accordingly, because "Chapter 403, which specifically relates to stormwater utility fees, does not expressly waive sovereign immunity for stormwater utility fees, it is clear that the State has not waived sovereign immunity in Chapter 403." Id. at 498.

5

In doing so, this Court cited City of Gainesville v. State Department of Transportation, 920 So. 2d 53 (Fla. 1st DCA 2005), review denied, 935 So. 2d 1219 (Fla. 2006). In Gainesville, the First District affirmed a trial court's dismissal of the City of Gainesville's action to collect stormwater utility fees from the Florida Department of Transportation. Like here, there was no written contract between the parties to collect stormwater utility fees authorized under Chapter 403. After rejecting the argument that "since DOT is a person within the meaning of chapter 180, Florida Statutes, sovereign immunity is waived, and the City [of Gainesville] does not need a contract to collect stormwater utility fees," the First District held:

> Statutes purporting to waive sovereign immunity are strictly construed in favor of the State, and must be clear and unequivocal. Waiver of sovereign immunity will not be implied.
>
> Here, the City refuses to accept that chapter 180 has a very specific listing of the municipal services included within its scope. One municipal service not included in that list is stormwater runoff. The Legislature, for whatever reason, decided not to include stormwater runoff within the scope of chapter 180. We are unable to rewrite the chapter to provide the relief sought by the City. Because chapter 180 does not provide a waiver of sovereign immunity for utilities authorized pursuant to chapter 403, the parties' circumstances have not changed since the first appeal.
>
> Consequently, although the stormwater fee may be a valid utility fee, consistent with our previous opinion, before the City can sue to collect the fee, it must have a written contract. See City of Gainesville v. Fla. Dep't of Transp., 778 So.2d 519, 530 (Fla. 1st DCA 2001). Since the City

6

acknowledges it does not have a written contract, the trial court properly dismissed the City's complaint with prejudice.

Id. at 53–54 (internal citations omitted). Gainesville has been cited with approval to reject similar attempts by municipalities to collect stormwater utility fees by the Second District[1] and the Fourth District.[2]

The City attempts to avoid these cases by going back in time and citing section 167.01, Florida Statutes (1971), as the basis for its authority to charge stormwater utility fees. The City contends section 167.01 constituted an express, clear, and unequivocal waiver of sovereign immunity as it relates to every person (and governmental entity) that uses a municipality's stormwater management system and receives a benefit from such use. Section 167.01 read:

> The city or town council may . . . construct drains and sewers . . . and charge upon those benefited such reasonable assessments as may be agreed upon by said council and the

---

[1] The Second District issued a per curiam affirmance citing Gainesville in an appeal by the City of Clearwater regarding stormwater utility fees assessed against a school board. See City of Clearwater v. Sch. Bd. of Pinellas Cnty., 17 So. 3d 1287 (Fla. 2d DCA 2009).

[2] Citing Gainesville and Florida Keys Community College, the Fourth District issued a per curiam affirmance in its review of a trial court's entry of final judgment, which found the School Board of Palm Beach County enjoys sovereign immunity from suit by the City of West Palm Beach for non-payment of stormwater utility fees. City of West Palm Beach v. Sch. Bd. of Palm Beach Cnty., 264 So. 3d 195 (Fla. 4th DCA 2019); Sch. Bd. of Palm Beach Cnty. v. City of West Palm Beach, No. 50-2013-CA-010144, 2018 WL 1946699 (Fla. Cir. Ct. 2018).

said party or parties . . . and every person who enters his particular drain into the main drain, or common sewer, and receives a benefit therefrom draining his land, shall pay to the city or town his proportional part of making or repairing the same.

§ 167.01, Fla. Stat. (1971). This statute, however, was repealed by the Municipal Home Rule Powers Act in 1973. Nevertheless, the City cites to the following existing statutory language indicating that the repeal of section 167.01 was not intended to prevent it from exercising powers it had authorized:

> It is the legislative intent that the repeal by chapter 73-129, Laws of Florida, of chapters 167 . . . of Florida Statutes shall not be interpreted to limit or restrict the powers of municipal officials, but shall be interpreted as a recognition of constitutional powers . . . . It is, further, the legislative intent that municipalities shall continue to exercise all powers heretofore conferred on municipalities by the chapters enumerated above . . . .

§ 166.042(1), Fla. Stat. (2020).

Without delving too deeply into this novel argument, we decline to accept that a repealed statute provides the clear and unequivocal legislative expression of intent needed to waive sovereign immunity, American Home Assurance Co. v. National Railroad Passenger Corp., 908 So. 2d 459, 471 (Fla. 2005), in light of the district court cases uniformly holding the Legislature did not waive sovereign immunity in Chapters 180 and 403, the current statements of municipal authority to charge stormwater utility fees.

Reversed and remanded.