# Third District Court of Appeal

## State of Florida

Opinion filed July 20, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-865
Lower Tribunal No. 18-42450
_____

**City of Miami Gardens, etc.,**
Appellant,

vs.

**City of North Miami Beach, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Carlos Lopez, Judge.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., and Eugene E. Stearns, Matthew C. Dates and David T. Coulter, for appellant, City of Miami Gardens.

Shubin & Bass, P.A., and John K. Shubin, Katherine R. Maxwell and Ian E. DeMello, for appellee.

Before FERNANDEZ, C.J., and LINDSEY and MILLER, JJ.

FERNANDEZ, C.J.

Plaintiff the City of Miami Gardens appeals the trial court's "Final Order Granting Defendant's Motion to Dismiss Amended Complaint with Prejudice." We agree in part with Miami Gardens and thus reverse in part, affirm in part, and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

The Norwood Water Treatment Plant ("Norwood Plant") is located within the geographical boundaries of the City of Miami Gardens ("Miami Gardens"). Before Miami Gardens was incorporated on May 13, 2003, as well as after, the City of North Miami Beach ("NMB") owned the Norwood Plant. NMB operated the Norwood Plant, which treats and distributes water to Miami Gardens, as well as consumers in Miami Gardens and NMB.

On January 7, 2003, NMB adopted an ordinance pursuant to section 180.191, Florida Statute (2003). In Ordinance Number 2002-25, NMB increased the surcharge from 15% to 25% for customers residing outside NMB's corporate limits that are served by NMB's water and sewer utility, the Norwood Plant.

On May 22, 2017, NMB entered into an agreement with a private contractor from Colorado, CH2M Hill Engineers, Inc. ("CH2M"), who took

2

over the day-to-day operations of the Norwood Pant.[1]  The agreement provided that CH2M was to operate, maintain, repair, replace, and manage the Norwood Plant. According to the agreement, NMB retained ownership of the Norwood plant, retained the right to the revenues generated by the plant, agreed to pay CH2M a fixed fee, and retained the "sole power, authority and responsibility for establishing policy and setting rates, charges, rents, surcharges and other amounts payable."

After the Norwood Plant was privatized in 2017, NMB continued to charge Miami Gardens and Miami Gardens' consumers, both residents and business entities, the 25% surcharge on water distributed from the Norwood Plant pursuant to section 180.191(1)(a), Florida Statutes (2003).  NMB consumers are not charged this 25% surcharge.

As a result, in December 2018, Miami Gardens, on behalf of itself and similarly situated residents or business entities located within the city of Miami Gardens that NMB billed and continued to bill for water services,  sued NMB to cease charging the 25% surcharge to Miami Gardens' consumers. In a two-count class action suit seeking to represent the Miami Gardens consumers who purchase water from the Norwood Plant (as Miami Gardens is a property owner within the municipal bounds of Miami Gardens and pays

---

[1] CH2M was subsequently acquired by Jacobs Engineering.

3

for water utilities used on its properties), Miami Gardens sought, in Count I, a declaratory judgment seeking the answer to three questions:

> (a) If [NMB] assigned to a private contractor all operational responsibility for water utilities it owns that are located outside its geographical bounds, is North Miami Beach still "operating" those water utilities?
>
> (b) If [NMB] is no longer "operating" water utilities it owns that are located outside its geographical bounds, may [NMB] lawfully charge a 25% surcharge on water provided to consumers within the City of Miami Gardens?
>
> (c) Does Section 180.191, Florida Statutes provide for the imposition of a 25% surcharge per billing cycle by [NMB] upon the City of Miami Gardens and the members of the class for water drawn from the aquifer located within the boundaries of the City of Miami Gardens which is processed in and never leaves the boundaries of the municipality?

Miami Gardens further sought an injunction on the imposition of the 25% surcharge to Miami Gardens consumers, as well as attorneys' fees and costs, as provided in section 180.191, Florida Statute (2003). In Count II of the complaint, Miami Gardens alleged a violation of section 180.191 because it claimed NMB was not operating the water utility as required by the statute and requested a refund of all surcharges unlawfully collected by NMB after the Norwood Plant was privatized.

The action was abated for six months for the parties to resolve the dispute. After no resolution, the parties returned to court. In August 2019, NMB filed a motion to dismiss Miami Gardens' complaint. NMB argued, in

4

part, that Miami Gardens' claims were barred by the statute of limitations. Miami Gardens responded, after which NMB filed a second motion to dismiss. NMB made the same arguments as before but also added that Miami Gardens' claims were barred by sovereign immunity and the voluntary payment doctrine and that the class allegations were insufficient.

The trial court held a hearing on the motion to dismiss. NMB contended that if the complaint was allowed to remain pending or an amended pleading was authorized, a more definite statement of damages and scope of relief was required. The trial court stated it did not see a reason to dismiss Miami Gardens' complaint and denied NMB's motion. The trial court then asked Miami Gardens to clarify the timeframe of its claims for monetary relief by amending its complaint. In February 2020, Miami Gardens complied with the trial court's request when it filed its Amended Class Action Complaint. In addition to re-alleging the first two counts it alleged in its initial complaint, Miami Gardens alleged a third count, this one for a refund pursuant to section 180.191.

Thereafter, the action was briefly stayed for NMB to appeal the trial court's order denying NMB's motion to dismiss. On July 7, 2020, this Court dismissed the appeal as moot because Miami Gardens had filed an amended complaint. City of North Miami Beach v. City of Miami Gardens,

306 So. 3d 211 (Fla. 3d DCA 2020). That same day, NMB filed a third motion to dismiss. This time, NMB argued that 1) Miami Gardens' monetary claims were barred by sovereign immunity, 2) Miami Gardens' claim that the surcharge could never be applied lawfully to consumers in Miami Gardens was legally insufficient, and 3) this same claim was time-barred.

Thereafter, while the lawsuit was pending, NMB filed a Suggestion of Mootness in October 2020. NMB argued that the case became moot when NMB terminated its agreement with CH2M on August 6, 2020 for operation and maintenance services related to NMB's water utility. It further argued the case became moot when in response to this litigation, NMB notified Miami Gardens on October 30, 2019 that NMB would waive the 25% surcharge for Miami Gardens itself, although not for the Miami Gardens residential and business consumers, effective October 2019. Attached to the Suggestion of Mootness, NMB filed an unauthenticated letter from NMB's City Manager to CH2M. The letter from NMB's City Manager to a Mr. Andrew Appleton at CH2M stated the following:

> Pursuant to the provisions of Section 5.3 of the Agreement, please accept this letter as written notice that the City of North Miami Beach, by and through its City Commission, has elected to terminate the Agreement for convenience.

> In accordance with the provisions of Section 5.12 of the Agreement, the City expects your company to make fully available its managers and employees performing services at the

6

Utility Facilities on a month-to-month basis for a period of six (6) months from the date hereof [August 6, 2020] to continue to perform all of the Services contemplated in the Agreement and the Succession Transition Plan agreed upon by the parties. Your company will be compensated in accordance with Section 5.12.

In view of the fact that there is much to accomplish to ensure a successful transition, I respectfully request a meeting as soon as practicable to discuss the implementation of the transition.

Thank you for your consideration in this matter.

On March 17, 2021, the trial court heard NMB's latest motion to dismiss. At the end of the hearing, based on the materials submitted and arguments made by counsel, the trial court granted NMB's motion for dismissal. Thereafter, in its order dismissing the amended complaint with prejudice, the trial court specified that it: 1) dismissed as moot the portion of Count I seeking a declaration that NMB is not authorized to impose a 25% surcharge based on the allegations in Miami Gardens' complaint because NMB terminated the agreement with CH2M, thus Miami Gardens no longer pays the 25% surcharge; 2) dismissed the remainder of Count I as legally insufficient because the portions of Count I seeking a declaration that NMB's surcharge is unlawful based on the location of NMB's water utility is not supported by the plain language of section 180.191(1); 3) dismissed Count I seeking declaratory relief and Count III seeking a refund related to the

location of the water utility because Miami Gardens brought the action fifteen years after Miami Gardens was incorporated and sixteen years after NMB adopted the 25% surcharge ordinance, thus it was barred by the four-year statute of limitations in section 95.11(3), Florida Statute; and 4) dismissed Counts II and III under the doctrine of sovereign immunity. This appeal followed.

Miami Gardens raises four issues on appeal, three of which have merit. Miami Gardens contends that the doctrine of sovereign immunity does not bar its claims; the trial court erred in dismissing the entire amended complaint for failure to state a cause of action; and its claims in Count I and II based on its contention that NMB was not authorized to impose a 25% surcharge while it was not operating the Norwood Plant are not moot. We agree in part with Miami Gardens.

"A motion to dismiss raises a question of law as to whether the facts alleged in the complaint are sufficient to state a case of action." State v. Beach Blvd. Automotive, Inc., 139 So. 3d 380, 386 (Fla. 2014). "In considering a motion to dismiss, the trial court is limited to the four corners of the complaint, must accept all allegations within the complaint as true, and must draw all inferences in favor of the non-moving party." Del Pino-Allen v. Santelises, 240 So. 3d 89, 90 (Fla. 3d DCA 2018). "Where a motion to

dismiss a complaint rests on facts outside the scope of the allegations contained in the complaint, the trial court commits reversible error in dismissing the complaint based on those extraneous matters." Reed v. Sampson, 349 So. 2d 684, 685 (Fla. 4th DCA 1977). On appeal of a judgment granting a motion to dismiss, the standard of review is *de novo*. Andrews v. Florida Parole Com'n, 768 So. 2d 1257, 1260 (Fla. 1st DCA 2000).

Miami Garden's first issue on appeal is that sovereign immunity is not a bar to its claims against NMB. We agree.

Section 180.191, Florida Statutes (2003), part of Florida's Municipal Public Works Act, provides, in part:

> (1)   Any municipality within the state operating a water or sewer utility outside of the boundaries of such municipality shall charge consumers outside the boundaries rates, fees, and charges determined in one of the following manners:
>
> (a)   It may charge the same rates, fees, and charges as consumers inside the municipal boundaries. However, in addition thereto, the municipality may add a surcharge of not more than 25 percent of such rates, fees, and charges to consumers outside the boundaries. Fixing of such rates, fees, and charges in this manner shall not require a public hearing except as may be provided for service to consumers inside the municipality.
>
> (b)   . . . In addition thereto, the municipality may add a surcharge not to exceed 25 percent of such rates, fees, and charges for said services to consumers outside the boundaries. . . .

9

"Municipality" is defined as any city, town, or village duly incorporated under the laws of the state. § 180.01, Fla. Stat. (2003). Section 180.191 applies to "municipally owned water and sewer utilities within the confines of a single county and may apply, pursuant to interlocal agreement, to municipally owned water and sewer utilities beyond the confines of a single county." § 180.191(3), Fla. Stat. (2003). Section 180.191(2) further provides that whenever "any municipality has engaged, or there are reasonable grounds to believe that any municipality is about to engage, in any act or practice prohibited by subsection (1), a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person or persons aggrieved." §180.191(2), Fla. Stat. (2003). In addition, the statute provides that when an action is commenced under this section, "the court in its discretion may allow the prevailing party treble damages and, in addition, a reasonable attorney's fee as part of the cost." § 180.191(4), Fla. Stat. (2003). The remedy provided for in section 180.191 was created to give consumers "protection from excess charges for utility services made by municipalities who exercise the exclusive privilege of providing the particular utility service". Village of Palm Springs v. Retirement Builders, Inc., 396 So. 2d 196, 198 (Fla. 4th DCA 1981).

Furthermore, section 180.191 was declared constitutional by the Florida Supreme Court in Mohme v. City of Cocoa, 328 So. 2d 422, 425 (Fla. 1976) (25% surcharge is not unreasonable to meet the utility service demands of those outside the municipality). In Mohme, the Supreme Court of Florida stated that the Legislature enacted section 180.191 to allow municipalities operating utilities to recoup the costs of providing utility services to consumers outside the municipal limits, due to the "ever increasing demand for utility services from established municipal utility systems." Id.

With respect to the doctrine of sovereign immunity, "Although a waiver of sovereign immunity by legislative enactment must be clear, specific and unequivocal, no magic words are required." Klonis v. State, Dept. of Revenue, 766 So. 2d 1186, 1189 (Fla. 1st DCA 2000) (internal citations omitted). "Courts determine whether there is a waiver of sovereign immunity based on legislative intent." Lee Memorial Health System v. Hilderbrand, 304 So. 3d 58, 61 (Fla. 2d DCA 2020). Intent can be found when the legislature enacts a statute that expressly waives the doctrine of sovereign immunity, and it can also be found "without an express mention of sovereign immunity." Id.

Here, the "clear, unambiguous legislative intent" of section 180.191, which applies solely to municipalities, is that a municipality would be named as a defendant in a claim under section 180.191 and that the municipality would be liable for money damages, as shown by the provision for treble damages in subsection (4) of the statute. Klonis, 766 So. 2d at 1190. Accordingly, NMB has no sovereign immunity protection here, as section 180.191(2) specifically authorizes an action against a municipality, which NMB is. Thus, sovereign immunity was not a bar to any of Miami Gardens' claims.

Furthermore, in Bill Stroop Roofing, Inc. v. Metropolitan Dade County, 788 So. 2d 365, 368 (Fla. 3d DCA 2001), this Court held that the doctrine of sovereign immunity does not protect a municipality from returning money illegally collected by them. In Stroop, the plaintiff brought an action for declaratory and other relief, challenging a registration fee charged by Miami-Dade County," which the plaintiff alleged was in violation of a statute precluding counties/cities from charging state-licensed contractors extra fees beyond the usual occupational license fees and building permit fees. Id. at 366. In addition to declaratory and injunctive relief, the plaintiff sought a refund on behalf of itself and others for the previously paid illegal fees. Id. Miami-Dade County asserted that the plaintiff's claim was precluded "by its

12

sovereign immunity." Id. This Court noted that the county claimed that "as a 'sovereign' it can improperly demand and extract monies from its citizens, then when caught with its hand in the citizens' pocket, simply decline to return the funds." Id. It stated, "Thus we conclude that our governments are required to refund taxes and fees illegally exacted, and the doctrine of sovereign immunity is inapplicable thereto." Id. at 368.

NMB contends that City of Key West v. Florida Keys Community College, 81 So. 3d 494 (Fla. 3d DCA 2012) requires affirmance on the sovereign immunity issue. However, City of Key West is not applicable, as that case dealt with the difference between an exemption versus sovereign immunity. Id. at 497. This Court further noted in that case that Chapter 180 does not apply to stormwater utilities, which was the issue in City of Key West. Id. at 498. Thus, City of Key West is distinguishable. Moreover, contrary to NMB's argument and reliance on Florida Highway Patrol v. Jackson, 288 So. 23d 1179 (Fla. 2020), the issue on appeal in Jackson dealt with when, during the course of litigation, should issues of sovereign immunity be decided. Id. at 1185-86 (explaining that "entitlement to sovereign immunity should be established as early in the litigation as possible"). Jackson did not deal with the issue of whether sovereign immunity applies to a certain type of claim, as NMB argues.

13

Accordingly, because sovereign immunity was the trial court's only ground for dismissal of Count II of Miami Gardens' amended complaint, the trial court erred in dismissing Count II of the amended complaint. Sovereign immunity was one of the grounds for dismissal of Count III, thus, the trial court erred in basing its dismissal of Count III on sovereign immunity grounds.

Count II of Miami Gardens' Amended Complaint alleged a violation of section 180.191 that mandates that a municipality must be operating the water utility in order to be able to add a 25% surcharge on water provided to consumers outside of the municipality's boundaries, in this case, Miami Gardens consumers. Miami Gardens alleged that since the time NMB entered into the water operation agreement, NMB no longer operated a water utility within the meaning of section 180.191. Looking to the four corners of the complaint and taking the allegations in the amended complaint as true, Miami Gardens has stated a claim against NMB based on Miami Gardens' operational theory. Under the statute, it is permitted to seek an award of compensatory damages beginning from May 22, 2017, through at least August 6, 2020, to, at a minimum, reimburse Miami Gardens and the plaintiff class for the 25% surcharges imposed by NMB during that period. Under section 180.191 and Bill Stroop, supra, NMB must refund the fees

14

illegally excised, if any. Further support is found in <u>Mohme</u>, where in addition to seeking declaratory and injunctive relief, the plaintiffs also sought money damages. The <u>Mohme</u> Court found that the trial court erred in dismissing the appellants' complaint under section 180.191 and remanded to allow the case to proceed. The Court cited to <u>Hunger v. City of Zephyrhills</u>, 307 So. 2d 487 (Fla. 2d DCA 1975), in which the Second District Court of Appeal found that upon proper proof upon remand, the City was to refund any users who paid the excessive charge. <u>Id.</u> at 489. In addition, section 180.191 provides that the trial court in its discretion may award the prevailing party treble damages and reasonable attorney's fees. § 180.191(4), Fla. Stat. (2016).

Next, Miami Gardens contends that the trial court erred in dismissing the amended complaint for failure to state a cause of action. Specifically, the trial court determined that Counts I and III of the amended complaint should be dismissed for failure to state a cause of action because Miami Gardens had no grounds to claim that the 25% surcharge imposed on consumers who live closest to the utility was unlawful. On this point the trial court was correct. The clear and unambiguous wording of the statute allows NMB to impose a surcharge of not more than 25% under section 180.191(1)(a) to Miami Gardens consumers while NMB is operating the water facility, as the Miami Gardens customers are located outside the

15

boundaries of the NMB municipality. And, as NMB correctly contends, the Florida Supreme Court in <u>Mohme</u> did not consider proximity to the utility a factor in analyzing whether it was proper to impose a surcharge on consumers located outside the boundaries of the operating municipality. Thus, under the plain language of section 180.191(1)(a), we agree that NMB was permitted to charge the 25% surcharge during the  period of time when NMB operated the Norwood Plant. <u>Holly v. Auld</u>, 450 So. 2d 217, 219 (Fla. 1984) (if statutory language is "clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.").

Question (c) in Count I for declaratory and injunctive relief stated, "Does section 180.191 provide for the imposition of a 25% surcharge per billing cycle by NMB upon Miami Gardens and members." Because the answer to this question is yes, the trial court was correct in dismissing that portion of Count I of Miami Gardens' amended complaint because under the clear unambiguous language of the statute, NMB was permitted to charge up to 25% surcharge to Miami Gardens' consumers while NMB was in compliance with the statute.

16

Turning to questions (a) and (b) in Count I of the amended complaint, Miami Gardens asked:

(a) If NMB assigned to CH2M all operational responsibility for water utilities it owns that are located outside its geographical boundaries, is NMB still operating those water utilities?

(b) If NMB is no longer operating water utilities that it owns that are located outside its geographical bounds, may NMB lawfully charge 25% surcharge to Miami Gardens consumers?

Both these questions set out causes of action for declaratory relief under section 180.191 and should not have been dismissed by the trial court. From March 22, 2017 (the time the operational agreement went into effect) to at least August 6, 2020 (the time when NMB alleges it terminated the operational agreement with CHM2), Miami Gardens alleges in its amended complaint that NMB was not operating the water facility as required by section 180.191. Thus, because Miami Gardens alleges NMB was not in compliance with the statute during that time, an allegation which must be accepted as true, NMB was not authorized to charge a surcharge of 25% or any surcharge to Miami Gardens' consumers. Accordingly, Miami Gardens' amended complaint states a cause of action for declaratory relief regarding questions (a) and (b), and the trial court should allow the case to proceed to answer questions (a) and (b) in Count I.

17

With regard to Count III of the amended complaint, the trial court was correct in dismissing Count III for refund because it is based on Miami Gardens' location theory and the proximity of Miami Gardens' consumers to the Norwood Plant. As previously discussed herein, the plain language of section 180.191 does not support Miami Gardens' position on this issue. See also Mohme, 328 So. 2d at 425.

Finally, Miami Gardens argues that its claims are not moot. In its order, the trial court concluded that "[t]he portion of Count I seeking a declaration that [NMB] is not authorized to impose a 25% surcharge" after the Norwood Plant was privatized was mooted by termination of the contract that privatized the plant and because "Plaintiff no longer pays the 25% surcharge."

"An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect. A case is 'moot' when it presents no actual controversy or when the issues have ceased to exist." Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992) (citations omitted).

Here, NMB alleges it terminated the contract with CH2M on August 6, 2020. It attached an unauthenticated letter from its City Manager to CH2M to its Suggestion of Mootness. As Miami Gardens contends, however, factual questions remain regarding the August 6, 2020 letter. The trial court cannot

18

engage in fact-finding on a motion to dismiss. <u>Chodorow v. Porto Vita, Ltd.</u>, 954 So. 2d 1240, 1242 (Fla. 3d DCA 2007). And because the letter was not supported by affidavit or testimony, was unsworn to, or otherwise authenticated, it is not admissible as evidence. <u>See</u> § 90.901, Fla. Stat. (2018); <u>Jackson v. State</u>, 979 So. 2d 1153, 1154 (Fla. 5th DCA 2008).

In addition, Miami Gardens does not dispute that since October 30, 2019, NMB has removed the surcharge from Miami Gardens' utility invoices. However, "[t]he Declaratory Judgments Act should be liberally construed to permit a party to obtain a determination of the existence of any right, status, immunity, power or privilege when he has an actual, practical and present need for such a determination." <u>Breen v. Arbomar Condo. Ass'n</u>, 501 So. 2d 697, 697-98 (Fla. 2d DCA 1987). Here, even though NMB stopped charging Miami Gardens the 25% surcharge on October 30, 2019, Miami Gardens does not know if the cessation of the 25% surcharge was permanent. Also, Miami Gardens claimed it was due a refund of the surcharges it paid and treble damages under section 180.191 for the time period that it alleges NMB was not operating the Norwood Plant, that being from May 22, 2017, through at least August 6, 2020. Thus, here, at a minimum, a present controversy existed with respect to the period between May 22, 2017 and October 30, 2019 as far as Miami Gardens is concerned and with respect to the period

between May 22, 2017 and August 6, 2020 in regards to the remaining class members, as NMB never stopped charging the remaining class members the 25% surcharge. As the <u>Breen</u> court stated, "The relief to be granted depended upon the court's determination of the validity of the surcharge. . . thus, a present controversy existed, and the appellants were in doubt as to their rights. The court should not have declined to rule on the merits." <u>Breen</u>, 501 So. 2d at 698. Similarly, Miami Gardens was in doubt about its rights, and a controversy existed for the recovery of the refund during the period that Miami Gardens alleges NMB did not operate the Norwood Plant. Thus, that issue is not moot.

**CONCLUSION**

Based on the foregoing, we reverse the trial court's "Final Order Granting Defendant's Motion to Dismiss Amended Complaint with Prejudice" in part, and we affirm it in part. We affirm the trial court's dismissal of question (c) in Count I of the Amended Complaint, as well as the dismissal of Count III. We reverse the dismissal of questions (a) and (b) in Count I and the dismissal of Count II of the Amended Complaint. The case is remanded for questions (a) and (b) in Count I to be reinstated; for Count II to be reinstated; and for further proceedings on Counts I and II.

20

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.